MAURICE COLBERT et al., Appellants, v INTERNATIONAL SECURITY BUREAU, INC., et al., Respondents, et al., Defendants.

Second Department, March 23, 1981

### APPEARANCES OF COUNSEL

*Francis E. Dorn* for appellants.

*Berel, Navarra & Mullen, P. C. (Sebastian J. Navarra* and *John M. Tomsky* of counsel), for respondents.

### OPINION OF THE COURT

DAMIANI, J. P.

This case presents two questions concerning the defense

of lack of in personam jurisdiction; one is recurrent, the other novel.

The plaintiffs sue to recover damages for defamation arising out of a private investigative report commissioned by the defendant Southern Railway Company from the defendant International Security Bureau, Inc., and allegedly prepared by defendant Arthur J. Schultheiss, an officer and director of International Security. On or about December 30, 1977 plaintiffs' attorney drew a summons and complaint and turned them over to a process server for delivery to the named defendants. The validity of the process server's attempt at serving defendant Southern Railway Company was challenged by that defendant and on appeal was ultimately sustained *(Colbert v International Security Bur.,* 70 AD2d 945, affd 49 NY2d 988). This appeal involves the other two defendants.

The process server went to the offices of International Security where defendant Schultheiss was employed and left a copy of the summons and complaint with Lenore Sobel, one of its employees.

Apparently Mrs. Sobel turned the papers over to a responsible officer of the corporation and he referred the matter to its attorney. Since the summons and complaint named both International Security and Schultheiss as defendants and charged them jointly with defaming plaintiffs in an investigative report prepared as a part of the corporation's business, the attorney drew a joint answer for both of those defendants which denied the material allegations of the complaint and set forth the following four defenses: (1) failure to state a cause of action, (2) lack of personal jurisdiction over the answering defendants, (3) truth, and (4) qualified privilege.

The plaintiffs moved to strike the affirmative defense of lack of jurisdiction from the answer of International Security and Schultheiss, claiming that Mrs. Sobel was a managing agent and that Schultheiss had answered as a "volunteer" and had therefore submitted himself to the jurisdiction of the court. Those defendants cross-moved to dismiss upon the ground of lack of jurisdiction. The cross motion was

supported by the affidavit of Schultheiss which stated: "At no time have I ever been served with a copy of the complaint either by personal service or by mail at my home or office".

On November 27, 1978 a hearing was held on the motion and cross motion before Mr. Justice BELLARD. The evidence adduced at the hearing disclosed that Lenore Sobel had been employed by International Security for a period of nine years. The other persons who worked in the office were Mr. Schultheiss and Mr. Van Norden, who were officers of the corporation, approximately seven investigators, who prepared the investigative reports that were the corporation's business, and Miss Panzer, who had administrative duties and worked with the investigators.

Mrs. Sobel testified that her duties consisted of taking telephone messages and relaying them to the investigators, who often worked outside the office, and to Mr. Schultheiss and Mr. Van Norden. She ordered stationery and supplies when directed to do so, and she did light bookkeeping. An accountant checked her books once a month. Checks received from clients in payment for services were accepted by her and held for safekeeping. She prepared the payroll checks but did not have "signatory powers".

In the absence of corporate officers, Van Norden and Schultheiss, no one was "in charge" of the office and no one was authorized to accept service of process. Mrs. Sobel testified that in the nine years that she had worked for International Security she had never been served with a summons or subpoena. She explained that she did not supervise anyone, stating "I take the orders. I don't give them." Each employee had his or her own work to do and, when the officers were out of the office, performed his or her duties more or less on an honor system.

January 16, 1978 was one of the very "rare occasion[s]" upon which Mrs. Sobel had been left alone in the office. A process server entered and asked whether there was anyone else present. Mrs. Sobel told him that she was alone and he then stated that he was going to leave a summons for International Security with her. She refused to take it but "he said it is the law, I have to take it", and he dropped

it on her desk and walked out. The process server then provided the plaintiffs' attorney with an affidavit stating that he had served Mrs. Sobel as the "managing agent" of defendant International Security. He was not called to testify at the hearing.

The hearing minutes contain the following colloquy between court and counsel (Norman Lowenthal for plaintiffs, Sebastian J. Navarra for defendants International Security and Schultheiss) on the issue of jurisdiction over Schultheiss:

"MR. LOWENTHAL: Your Honor, at the outset they speak in terms of the alleged service of Arthur J. Schultheiss. There is no question that Arthur J. Schultheiss was never served; but he voluntarily appeared in this action. Once he voluntarily appears in the action we have jurisdiction of this man. We have never said we served the man. In his answer he appeared.

"THE COURT: *Did he appear specially?*

"MR. LOWENTHAL: No. The general answer we never served him. He voluntarily appeared. That is jurisdiction.

"MR. NAVARRA: * * * This appearance by Mr. Schultheiss in this action was raised by an affirmative defense of lack of jurisdiction. Our memorandum of law in support of the same amply demonstrates and cites cases that indicate where the issue of jurisdiction and lack of jurisdiction was raised it is not waived.

"THE COURT: *All I ask you is if he appears specially * * *

"MR. LOWENTHAL: Here is the affidavit, your Honor. (Handed)

"Your Honor, as far as the other defendant, Arthur Schultheiss, we do not have any affidavit of service. We have never claimed that we ever served this man with a summons and complaint; nor do we ever say we served somebody else on his behalf. *It is our contention* at this time *that this man* put in an answer, *did not appear especially; and in that way he voluntarily subjected himself to the jurisdiction of this court.*

"MR. NAVARRA: Your Honor —

"THE COURT: Counsellor, he makes the admission that Arthur Schultheiss had never been served.

"MR. NAVARRA: Yes.

"THE COURT: Admits that.

"MR. NAVARRA: Right.

"THE COURT: Now he is trying to say it was cured by answer, by an answer.

"MR. NAVARRA: That is what he said, right." (Emphasis added.)

After Mrs. Sobel testified, the closing arguments by counsel touched upon the point at issue:

"MR. LOWENTHAL: * * * I now wish to argue the point as far as the service—the non-service upon a defendant who then puts in an answer and appears in that way; and then states in his answer that there was no service because of whatever it was. I say that is a voluntary service, a voluntary appearance and an answer * * *

"MR. NAVARRA: Your Honor, taking the point of the question of whether Mr. Schultheiss voluntarily appeared in this action * * * Pursuant to CPLR, Section 320, the statute tells us what your appearances are, and I say there is no question he was never personally served in this action. But even though we filed this answer on May 10, 1978 we preserved the objection to jurisdiction by including therein the affirmative defense of lack of jurisdiction."

Mr. Justice BELLARD denied plaintiffs' motion to strike the defense and granted the cross motion to dismiss. Plaintiffs have appealed.

On appeal plaintiffs contend that they obtained in personam jurisdiction over the corporate defendant International Security by serving Mrs. Sobel as its "managing agent". We cannot agree.

The record in this case makes it abundantly clear that Mrs. Sobel was a mere receptionist and clerk without supervisory duties or any administrative power to act on behalf of the corporation. Accordingly, she was not a "managing agent" within the meaning of CPLR 311 (subd 1). The term "managing agent" as used in the laws governing civil

practice was long ago defined by the Court of Appeals to the effect that a "managing agent must be some person invested by the corporation with general powers involving the exercise of judgment and discretion" as distinguished from a mere employee "who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it" *(Taylor v Granite State Provident Assn.*, 136 NY 343, 346; see, also, Ann., 71 ALR2d 178). We reject plaintiffs' claim that any corporate employee who has been left to mind an office in the absence of superior corporate officials can be deemed a managing agent for the purposes of service of process. Although this view is supported by at least one commentator (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C311:1, p 256) and by intimations in our recent decision in *Sullivan Realty Organization v Syart Trading Corp.* (68 AD2d 756), to accept such a claim would essentially result in redefining the term "managing agent" to mean any "person of suitable age and discretion" (cf. CPLR 308, subd 2) employed by the defendant corporation. However desirable such a liberalization of the method of service upon a corporation might be, it is the duty of the courts in interpreting a statute to attempt to carry out the intent of the Legislature (see McKinney's Cons Laws of NY, Book 1, Statutes, § 92).

Ever since the adoption of the Field Code in 1848 the term "managing agent" has been used to denote one of the class of persons to whom a summons for a corporation may be validly delivered (L 1848, ch 379, § 113, subd 1). For many years the courts have defined the term in question to exclude lower level corporate employees such as Mrs. Sobel *(Taylor v Granite State Provident Assn.*, 136 NY 343, *supra;* and see Survey of New York Practice, 54 St. John's L Rev 382, 389, n 21). This interpretation was well settled when in 1963 the Legislature again used the term "managing agent" in the newly adopted CPLR 311. The Second Report to the Legislature of the Advisory Committee on Practice and Procedure stated that this phraseology was carried over from prior acts "without any change in substance" (quoted in Legis Studies & Reports, McKinney's

Cons Laws of NY, Book 7B, CPLR 311, p 257) and we can only infer from the Legislature's adoption of the Advisory Committee's language that no change in long-settled rules was intended. To adopt the construction now urged by the plaintiffs would thus constitute nothing less than forbidden judicial legislation (see McKinney's Cons Laws of NY, Book 1, Statutes, § 73).

The cases cited by the plaintiffs as authority for their position in this regard are distinguishable. The case of *Sullivan Realty Organization v Syart Trading Corp.* (68 AD2d 756, 759, 760, *supra*) stands only for the proposition that where a receptionist has for years accepted service of process for the corporation without rebuke by her superiors, a strong inference arises that she was an "agent authorized by appointment" to receive service, which inference must be successfully rebutted by the corporation in order to avoid a finding that in personam jurisdiction over the corporation had been acquired (see, also, Survey of New York Practice, 54 St. John's L Rev 382, 389). In the prior appeal in this case involving service upon defendant Southern Railway Company, the process server left the summons with that defendant's office manager who was clothed with substantial managerial powers and to whom he had been directed as the proper person to receive process by other employees in that defendant's office *(Colbert v International Security Bur.*, 70 AD2d 945, affd 49 NY2d 988, *supra)*. Suffice it to say that neither of those factors is present here (see, also, *Fashion Page v Zurich Ins. Co.*, 50 NY2d 265). The case of *Green v Morningside Hgts. Housing Corp.* (13 Misc 2d 124, 125, affd 7 AD2d 708), relied upon by plaintiffs, is simply authority for the limited proposition that where one of the enumerated persons entitled to receive service on behalf of a corporation is present in the office, is avoiding service, and the process server delivers the summons to a receptionist who immediately redelivers it to the proper person, service will be upheld because "the delivery [was] so close both in time and space that it can be classified as a part of the same act."

In summary on this point, we hold that service upon Mrs. Sobel, a receptionist employed by corporate defendant International Security, did not confer in personam jurisdic-

tion on the corporation where she possessed no supervisory or administrative duties, she specifically told the process server that she was not authorized to accept service, and he was not directed to her by other employees as a proper person upon whom service could be made. While we are aware that the service provisions of the CPLR are to be liberally construed (CPLR 104; *Fashion Page v Zurich Ins. Co.*, *supra*, p 271), to uphold service upon International Security on these facts would be violating, rather than liberally construing, the mandate of the statute.

We now turn to the question of whether Special Term properly granted the motion of the individual defendant Schultheiss to dismiss plaintiffs' action against him for lack of in personam jurisdiction. Plaintiffs contend that since they never attempted to serve Schultheiss, his service of an answer rendered him subject to jurisdiction as "a volunteer" despite the fact that his answer raised the defense of lack of jurisdiction. The answer to plaintiffs' contention in this regard is to be found in CPLR 320, which states, in relevant part:

"Rule 320. Defendant's appearance

"(a) Requirement of appearance. The defendant appears by serving an answer or a notice of appearance, or by making a motion which has the effect of extending the time to answer * * *

"(b) When appearance confers personal jurisdiction, generally. Subject to the provisions of subdivision (c), an appearance of the defendant is equivalent to personal service of the summons upon him, *unless an objection to jurisdiction under paragraph eight of subdivision (a) of rule 3211 is asserted by motion or in the answer as provided in rule 3211.*" (Emphasis added. Subdivision [c] deals with limited appearances in in rem actions and is not relevant to the issue on this appeal.)

In our view the *objective* fact that plaintiffs never attempted service upon Schultheiss is irrelevant. In forging a rational interpretation of the statute, a court should place itself in the position of the hypothetical "reasonable man" faced with the dilemma of Schultheiss and should measure the propriety of his actions by the *subjective* thoughts such

dilemma would generate. What would a reasonable person think when, by whatever means, he comes into possession of a summons and complaint naming him as a defendant in an action to recover for libel seeking $1,200,000 in special damages and $2,500,000 in punitive damages? He may believe that service was improper, but he cannot be sure that service upon him was never attempted because he has the process and he is named as a defendant. What should he do? Must he take the chance that plaintiff will claim that service upon him was attempted (after all, "sewer service" and false affidavits by process servers are not uncommon; see, e.g., Siegel, New York Practice, § 71) and thus risk the entry of a default judgment against him? Is his only remedy to move to vacate such a default judgment or can he meet the question "head on" and challenge jurisdiction immediately? Reasonable prudence, of course, dictates the latter course (see Note: The New Status of the New York Law of Appearances, 30 Brooklyn L Rev 67, 70: "The manifestly prudent course of conduct is to challenge the jurisdiction of the court before default"; *York v Texas*, 137 US 15, 21; Sixteenth Ann Report of NY Judicial Council, 1950, pp 197-198). The plaintiffs would penalize Schultheiss for exercising such prudence despite the fact that in this case there were ample grounds for a reasonable man to conclude that an attempt to serve him had been made. Service upon the corporation was arguably invalid because Mrs. Sobel was not one of the enumerated persons authorized in CPLR 311 to receive service upon a corporation. However, subdivision 2 of CPLR 308 provides that valid personal service upon a natural person may be made by leaving the summons with a person of suitable age and discretion at his actual place of business and by mailing a copy thereof to his last known residence. Delivery of plaintiffs' process to Mrs. Sobel met the first prong of this test and although Schultheiss never received a copy in the mail, he could not be certain that plaintiffs had not mailed it (it could have been lost in the mail). Personal delivery of the summons to the defendant is no longer virtually the only method for serving process upon an individual. Utilization of the alternate "delivery and mail" service provisions of subdivision 2 of CPLR 308 can create doubt in the mind of a person named

in a process as a defendant as to whether he was the intended recipient, where, as here, he has the same business or residence address as another named defendant.

It thus appears that the plaintiffs have taken a fact which is necessarily outside the knowledge of Schultheiss (viz., that they never actually attempted to serve him) and have made it the cornerstone of their argument that the defense of lack of jurisdiction raised by answer in such circumstances is invalid, thereby subjecting Schultheiss to in personam jurisdiction as a volunteer. Such a result was never intended by the drafters of our practice statutes. A person who has knowledge of a suit naming him as a defendant and who claims that he was not properly served has always had the right to challenge jurisdiction immediately and has not been relegated to a motion to vacate a default judgment after the fact.

In common law practice before the adoption of the Field Code, an objection to in personam jurisdiction had to be taken by a special appearance and could not be asserted in an answer (see, e.g., *Van Deusen v Hayward*, 17 Wend 67, 70; *Seymour v Judd*, 2 NY [Comst] 464, 468; Homburger & Laufer, Appearance and Jurisdictional Motions in New York, 14 Buffalo L Rev 374, 382, ns 51, 53 and accompanying text [hereinafter cited as Homburger & Laufer]). The rationale for this was that it was thought to be inconsistent to deny jurisdiction and at the same time litigate the merits.

In 1848 the Legislature adopted the Code of Procedure known as the Field Code after one of its drafters, David Dudley Field (L 1848, ch 379; see Coe & Morse, Chronology of the Development of the David Dudley Field Code, 27 Cornell L Q 238). The initial version of the Field Code contained no mention of the special appearance and an objection that the court had no jurisdiction over the person of the defendant could be taken by demurrer when the defect appeared on the face of the complaint and by answer when it did not (Code of Procedure of 1848, §§ 122, 128, L 1848, ch 379). Professors Homburger and Laufer explain (14 Buffalo L Rev 374, 381): "Thus, the statutory language seemed to permit a defendant to rely in his demurrer on lack of jurisdiction of the person along with any other

ground enumerated in the Code, *e.g.*, failure to state facts sufficient to constitute a cause of action. Also, under the wording of the Code, when the jurisdictional defect did *not* appear on the face of the complaint, the defendant could assert the defect in his answer, together with defenses to the merits and denials, even though he had previously demurred to the complaint on some other ground and thus had appeared. Finally the broad language of the Code could very well have been interpreted as including objections to the process or its sufficiency, in addition to the objection that the defendant was not subject to the court's jurisdiction."

Before the Code as originally written could receive authoritative judicial interpretation on this point, the Legislature amended section 139, which provided that a court had jurisdiction from the time of the service of a summons, to include a sentence which stated "A voluntary appearance of a defendant is equivalent to personal service of the summons upon him." (L 1851, ch 479, § 1). The Final Report of the Commissioners on Practice and Pleadings (1850, Assembly Doc No. 16, p 262), recommended this change to enlarge the original wording of section 139 "so as to include a voluntary appearance *without service of process*". (Emphasis added.) The courts took this language to mean that in cases where service had not been attempted or properly effectuated the defendant could not serve an answer without subjecting himself to personal jurisdiction (Homburger & Laufer, p 382). Service of an answer by the defendant contesting the merits in any way, even if it contained the defense of lack of personal jurisdiction, was construed as a general appearance subjecting the defendant to jurisdiction (see Siegel, New York Practice, § 109, p 136).

The first edition of the Carmody-Wait Cyclopedia of New York Practice dealt with the effect which the common law gave to a general appearance where no summons had ever been served, stating: "The effect of a voluntary appearance without service of process is to confer on the defendant the same rights as though served, and to give the plaintiff the same rights as though he had duly served the defendant with process. So where a notice of appearance is served, the court acquires the same jurisdiction as though personal

service of the summons had been made within the state, and such jurisdiction is not divested by the subsequent service of an answer denying the jurisdiction of the court. *A general appearance*, as for instance one effected by the service of a notice of appearance upon the plaintiff's attorney, *makes unnecessary the service of a summons* or proof of such service, since all the jurisdiction which the proper service of the summons could give is obtained by such appearance." (3 Carmody-Wait, NY Prac, Appearances, § 36, p 384; emphasis added.)

In the case of *Pacilio v Scarpati* (165 Misc 586, 588-589) it was stated that "[t]he voluntary general appearance of the defendant * * * was equivalent to personal service of the summons upon him. It gave the court personal jurisdiction. If there was a defect in the service of the summons, *or if no summons was served at all*, the defendant's appearance would make that unnecessary" (Emphasis added.)

Carmody-Wait clearly indicates, however, that if the appearance was special and not general, the defendant could "litigate the question of jurisdiction over his person * * * without becoming a participant in the action to the extent that he submits to jurisdiction over his person" (3 Carmody-Wait, NY Prac, Appearances, § 49, p 398). It has long been the law in many jurisdictions that a named defendant can make a special appearance to question the jurisdiction of the court where no attempt to serve process was made *(Hand v Hand,* 131 Mont 571, 576-577; *Lindsey v Ferguson,* 80 SW2d 407, 409-410 [Tex]; *Matter of Blalock,* 233 NC 493, 503-504; 5 Am Jur 2d, Appearance, § 2; 6 CJS, Appearances, § 4; cf. *Plovey v Vogele,* 264 Wis 416, 419-421; *Hale v Campbell,* 40 F Supp 584, 587, revd on other grounds 127 F2d 594; *Norfolk & Ocean View R. R. Co. v Consolidated Turnpike Co.,* 111 Va 131, 136, writ of error dsmd 228 US 326).

The judicially created device of the special appearance and the practice concerning it, as outlined above, endured for 100 years without express statutory authority.

In 1950 the Judicial Council commissioned a report to clarify and improve the procedure relating to the special appearance which stated in relevant part (Sixteenth Ann

Report of NY Judicial Council, 1950, p 196) : "Where the service of process is itself effective to bring the defendant within the jurisdiction of the court, the general appearance, in New York at least, serves only to entitle the defendant to copies of all subsequent papers and to notice of all subsequent proceedings in the action. *Where such process has not been served, however, the general appearance itself brings the person of the defendant within the jurisdiction of the court.* * * * A special appearance is the method by which the defendant is permitted to raise his objection to the court's jurisdiction over him, either personally or through his property." (Emphasis added.)

As a result of that report and the recommendation of the Judicial Council, the Legislature in 1951 adopted a new section, 237-a of the Civil Practice Act, which codified the former rules relating to the special appearance but relaxed prior law by permitting joinder of objections to the court's jurisdiction over the subject matter and the defendant's person (L 1951, ch 729, § 1; Homburger & Laufer, p 382, n 55).

In 1954 an effort to entirely rework the statutes and rules governing civil practice in this State began with the creation of the Advisory Committee on Practice and Procedure. In 1958 the Advisory Committee's Second Preliminary Report recommended that the special appearance be abolished and that a simplified procedure for contesting personal jurisdiction be created (Second Preliminary Report [1958], Advisory Committee on Practice & Procedure, p 152). The Fourth Preliminary Report in 1960 proposed what eventually became CPLR 320. What that section means is quite simple. A named defendant has made an appearance if he serves a notice of appearance or an answer or makes a motion which has the effect of extending his time to answer. Since a motion to dismiss under CPLR 3211 extends the time to answer, the making of such a motion constitutes an appearance. The fact that a defendant has appeared does not necessarily mean, however, that he has thereby subjected himself to the in personam jurisdiction of the court. An appearance is not equivalent to personal service of the summons where an objection to jurisdiction is asserted by motion or answer (CPLR 320, subd [b]). CPLR

3211 (subd [e]) parallels CPLR 320 by providing, in substance, that an objection to jurisdiction is not waived where it is made the subject of a motion to dismiss on that ground (CPLR 3211, subd [a], par 8) or, if no motion to dismiss is made, is asserted in the defendant's answer.

The Fourth Preliminary Report of the Advisory Committee on Practice and Procedure makes its abundantly clear that the wording chosen for CPLR 320 was intended to change prior practice by simplifying the procedure whereby an objection to jurisdiction could be made. However, the revision was not intended to eliminate the right of a defendant to challenge jurisdiction under any circumstances where that right formerly existed. The Advisory Committee notes state in this regard that:

"[S]ubdivisions [(b) and (c)] are new. They replace the last sentence of * * * section 237 [of the Civil Practice Act], providing that a voluntary general appearance is equivalent to personal service, and section 237-a, providing for a special appearance to contest jurisdiction over the person. The [provisions] abolish the special appearance, allowing an objection to jurisdiction over the person to be raised either by motion under [CPLR 3211] or in the *answer.* * * * The objection is waived if not raised by one of these two methods * * *

"The term 'appearance' is used in the * * * subdivisions instead of 'voluntary general appearance'; since the special appearance is eliminated there is no need to distinguish it from the 'general' appearance * * *

"Since the preliminary special appearance to contest personal jurisdiction is eliminated and the objection is to be raised with other defenses or objections in a motion or by answer, *the rule of the last sentence of section 237 that a voluntary general appearance confers personal jurisdiction has been changed. Subdivision (b) provides instead that an appearance confers such jurisdiction only if the defendant has waived the objection by failing to raise it in the proper manner. If he has so raised it the appearance does not confer jurisdiction;* the objection may be joined with other defenses and, if denied, may be urged again on appeal. Federal rule 12, which also eliminates the special appearance, accom-

plishes the same result by providing that '[N]o defense or objection is waived by being joined to one or more other defenses or objections in a responsive pleading or motion.' " (Fourth Preliminary Report, Advisory Committee on Practice & Procedure [1960], p 187; emphasis added.)

The law reviews and commentators immediately hailed the revision for simplifying the method by which an objection to in personam jurisdiction could be taken and for permitting joinder of objections to jurisdiction with a defense on the merits (Note: 30 Brooklyn L Rev 67; Homburger & Laufer, pp 408-409; Note: Legislation, CPLR—Appearances, 31 Brooklyn L Rev 133; Notes: Article III of the New York Civil Practice Law and Rules: Jurisdiction, Service and Appearance, 37 St. John's L Rev 285, 320-329; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C320:4, p 364; 1 Weinstein-Korn-Miller, NY Civ Prac, par 320.09).

The long and the short of this historical discussion is that the law always recognized the right of a defendant to make a special appearance even where no summons was ever served. The hearing minutes in the instant case clearly establish that plaintiffs' attorney claimed that Schultheiss was a volunteer because he had not made a special appearance. He was obviously unaware of the fact that the special appearance was abolished with the adoption of the CPLR. Its functional equivalent under present practices is the right conferred by CPLR 320 (subd [b]) to assert the defense of lack of personal jurisdiction by motion or by answer.

In discussing a named defendant's right to move to dismiss for lack of personal jurisdiction under CPLR 3211 (subd [a], par 8) Professor Siegel states:

"Defects in personal jurisdiction can emanate from any number of sources. *It may be that the defendant was never served with the summons*, or was served with it defectively, or by an unauthorized method. Such defect can render the service void and, if it does, the court is deprived of personal jurisdiction and paragraph 8 is invoked * * *

"Any defect, in short, which deprives the court of personal jurisdiction is sufficient to invoke paragraph 8." (Sie-

gel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:30, p 34; emphasis added.)

If the failure to serve the defendant with process is sufficient to support a motion to dismiss under CPLR 3211, then by parity of reasoning it should also be sufficient to support assertion of the defense of lack of jurisdiction by answer.[1] Subdivision (b) of CPLR 320 states that an appearance of the defendant is equivalent to personal service of the summons upon him unless an objection to jurisdiction is asserted by motion *"or"* answer (emphasis added). In its elementary sense, the word "or" as used in a statute is a disjunctive particle indicating an alternative and it often connects a series of words or propositions presenting a choice of either (McKinney's Cons Laws of NY, Book 1, Statutes, § 235; *People v Cubiotti*, 4 Misc 2d 44, 45-46; *McSweeney v Bazinet*, 269 App Div 213, 216, affd 295 NY 797). Since the statute expressly grants the choice to the defendant as to how he will assert the defense we can only conclude that the *legal effect* of raising the jurisdictional objection by either authorized method is the same; the defendant has appeared but his appearance does not subject him to in personam jurisdiction and he is not a "volunteer" if he uses one method rather than another. It is only where a defendant who has not been served makes an appearance without raising the defense at all that he becomes a volunteer. The *practical effect* of asserting the defense by answer rather than by motion is to put off resolution of the objection until the trial. This causes no prejudice to the plaintiff because he can, if he wishes, immediately move to strike the defense

---

1. There is a dearth of reported cases under the CPLR on this issue. Respondents cite *Bides v Abraham & Strauss Div. of Federated Dept. Stores* (33 AD2d 569) as a prior case directly in point. In that case the plaintiff sued Abraham & Strauss and a corporation named Harry Perlman, Inc. Perlman's answer asserted the defense of lack of personal jurisdiction. The memorandum decision of this court stated that "plaintiff's complaint was dismissed as to Perlman after a traverse established that Perlman *had not been personally served with the summons*". (Emphasis added.) It thus appears to be a case in which the defense of lack of personal jurisdiction was interposed by answer and sustained by the trial court where service upon Perlman had never been attempted. Examination of the record on appeal in the *Bides* case establishes, however, that the plaintiff had sought to serve the corporate defendant Perlman but did not properly serve one of the persons enumerated in CPLR 311 (subd 1). *Bides* is thus inapposite to the instant case.

under CPLR 3211 (subd [b]) and obtain an expeditious determination of the jurisdictional issue (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3211:41, p 43). That, in fact, is what the plaintiffs did in this case. Defendant Schultheiss, however, preserved his objection in full accordance with the provisions of the statute.

Plaintiffs contend that Schultheiss is a volunteer because he cannot "have it both ways", that is, he cannot (1) answer the complaint and at the same time (2) tell the court by his affirmative defense of lack of jurisdiction that he is not in the action. The answer to this claim is that the precise legislative purpose in adopting CPLR 320 (subd [b]) was to allow him to do exactly that (see, e.g., *Katz & Son Billiard Prods. v Correale & Sons*, 26 AD2d 52, 53-54, affd 20 NY2d 903; *Goodman v Solow*, 27 AD2d 920; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C320:4, p 365; Siegel, New York Practice, § 111).

Plaintiffs cite the case of *Matter of Ladin (D. & C. Textile Corp.)* (20 AD2d 8, affd 14 NY2d 781) for the proposition that a defendant, named but not served in an action, must be content to remain quiet, out of court, until invited to appear therein, for the plaintiffs cannot be compelled unreasonably to enter upon litigation which they have not actively commenced. In *Ladin* certain named defendants served notices of appearance despite the fact that they had not been served by the plaintiff. Those notices of appearance were rejected. The Appellate Division, First Department, held (p 10) that a party "uninvited and unwelcome" could not intrude upon the court and the plaintiff unless he had some right to protect which rendered his appearance necessary. *Ladin* thus stands for the basic proposition that a person named as a defendant but not served has no right to compel the prosecution of a suit against the will of the plaintiff where no right or interest of that person will be adversely affected by the outcome of the suit. The situation in the instant case is precisely the reverse of that presented in *Ladin*. The plaintiffs, far from being unwilling to have him in the suit, are actively seeking to have Schultheiss held subject to the in personam jurisdiction of the court. De-

fendant Schultheiss did not seek to appear and contest the action on the merits. Rather, he simply sought a judicial determination that no action was pending against him. This is exactly what CPLR 320 (subd [b]) grants him the right to do, and if the court had decided that his objection to jurisdiction was not well taken, his answer would then have served to join issue on the merits.

Plaintiffs also argue that to permit Schultheiss to appear and contest jurisdiction when no attempt to serve him had ever been made "would cause an objectionable result, injustice, [and] mischief". We cannot agree. The service of an answer by Schultheiss asserting the jurisdictional defense was not some sort of tactical maneuver unfairly designed to escape liability forever. It worked no injustice or mischief. A dismissal for lack of jurisdiction over the person of the defendant is not on the merits (CPLR 5013; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5013.02). If a plaintiff who has had his complaint dismissed for lack of in personam jurisdiction over the defendant wants to hold that defendant in the case, he need only serve the summons and complaint properly. If the Statute of Limitations has run in the interval, that is a fault of plaintiff's own making and was not caused by the defendant. By asserting the jurisdictional defense in his answer, Schultheiss favored plaintiffs by alerting them that jurisdiction was challenged and that if they wanted to stop the running of the statute, they had better make certain that he was properly served. Instead they relied upon the fact that they had never even attempted to serve Schultheiss and claimed that he was therefore a volunteer. Plaintiffs chose the course they took at their peril if the volunteer claim did not succeed. Defendant Schultheiss however, did nothing to lull them into a false sense of security.

Simply stated, the construction which the plaintiffs seek to have this court place upon CPLR 320 is that if an attempt at service was faulty, subdivision (b) permits a defendant to claim in his answer that the action was irregularly commenced, but if no service was ever attempted the named defendant may not, in a proper exercise of caution, seek a judicial determination that the action is not pending against him. This proposed construction (1) is illogical, (2)

flies in the face of the express wording of the statute, (3) subjects the named defendant to the risk that a default judgment will be taken against him with no means of preventing that result, and (4) ignores the simple reality that a person who somehow obtains copies of process naming him as a defendant cannot possibly know for certain that service upon him was never attempted. A major purpose of the CPLR was to eliminate just such hypertechnical pleading rules and traps for the unwary as the plaintiffs would now have us create. The plain, unambiguous, all-inclusive language of CPLR 320 should not be impaired by such a narrow exception.[2] It is our view that the objective fact of nonservice here is unimportant and that a defendant such as Schultheiss has the right to test jurisdiction where he is named in process which has come to his attention and he wishes to obviate the risk that the plaintiff will take a default judgment against him. It would be grossly unfair to hold that because a defendant has chosen to contest jurisdiction he is, for that reason alone, subject to jurisdiction.

LAZER, GIBBONS and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, dated December 5, 1978, affirmed, with $50 costs and disbursements.

---

2. Compare the recent case of *Fashion Page v Zurich Ins. Co.* (50 NY2d 265, 271) in which the Court of Appeals held that a statute governing the method of service of process should "be liberally construed" and "should not be read in * * * a narrow and technical manner."