OPINION OF THE COURT
Beatrice Burstein, J.
The issue before this court is whether the defendant White Eagle International, Inc. (White Eagle), was properly served with a summons and complaint, pursuant to CPLR 311 (subd 1). At the traverse hearing before this court, the process server, Matteo J. DeGregorio, testified that on February 22,1982 he went to a building, located at 300 Garden City Plaza (Garden City), examined the building directory and proceeded to the fourth floor, where he stepped off the elevator and found the office of White Eagle “right in front of me because there was a sign which said White Eagle”.. Someone answered his knock, and in response to his question, he was advised that this was the office of White Eagle. He asked the person who opened the door if he was “somebody in charge of the corporation”, to which the person, later identified as Larry Hickey, said yes. Mr. DeGregorio further testified that on a prior occasion, in a totally unrelated case, he served process upon White Eagle by serving Larry Hickey, who “was there and *339 accepted the paper”. Mr. DeGregorio stated his service of process over the past three years has never been questioned. This was not controverted.
Mr. DeGregorio further testified that he had previously served defendant Jack Fox in this action by substituted service, which included leaving a copy of the summons with Mr. Hickey. (That service is not being contested.) I find Mr. DeGregorio’s testimony as set forth totally credible.
Mr. Hickey testified that he was employed by White Eagle from 1979 to 1980, but from November, 1981 through April, 1982 he was employed by one Tailored Package Systems, Ltd. Mr. Hickey stated that defendant Jack Fox was a principal in both that company and White Eagle, and that Tailored Package Systems, Ltd. paid the rent on the premises occupied by White Eagle and used its telephone. However, he did not contradict the testimony of Mr. DeGregorio to the effect that the only sign on the office was that of White Eagle, and there was no indication that the office was also that of Tailored Package Systems, Ltd. Mr. Hickey stated that he answered the telephone for White Eagle and took its messages, accepted its packages, and greeted and admitted its visitors. In fact, on the date in question and generally during that entire period, he stated he was the only person on the premises!
He recalled that Mr. DeGregorio was there a total of four times asking for Mr. Fox, and that on the first occasion he told Mr. DeGregorio that he was not an officer of White Eagle. He testified he never told Mr. DeGregorio that he was its managing agent or that he worked for White Eagle. However, he did not tell Mr. DeGregorio he was not an employee of White Eagle, and he was not authorized to accept service of process on its behalf, nor did he tell Mr. DeGregorio not to leave the process with him. Furthermore, he never denied Mr. DeGregorio’s testimony that he had said he was “someone in charge of the corporation”. Instead, he had accepted process twice before from Mr. DeGregorio, and on this occasion, he stated he “told Mr. DeGregorio he could leave the papers and when Mr. Fox came in I would give them to him”. Apparently he did immediately redeliver the papers.
*340 In pertinent part, CPLR 311 (subd 1) provides that personal service upon a corporation, foreign or domestic, shall be made by delivering the summons “to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service”.
Defendant argues that Larry Hickey did not hold any of the named positions and was not even employed by it, nor was he authorized in any way to accept service on its behalf. Personal delivery of a summons on the wrong person does not constitute valid service, even if the summons shortly thereafter comes into possession of the party being served. (McDonald v Ames Supply Co., 22 NY2d 111.) Nevertheless, when service upon a corporation is purportedly made through redelivery of the summons, the cited statute is to be liberally applied. (Fashion Page v Zurich Ins. Co., 50 NY2d 265; Conroy v International Term. Operating Co., 87 AD2d 858; De Vore v Osborne, 78 AD2d 915.) Thus, a corporation is free to disregard title or position, and without the formalities required by CPLR 318, choose an agent for service of process. (Fashion Page v Zurich Ins. Co., supra.) Furthermore, an inference can be drawn that such an agency has been created when the person receiving process has done so before without rebuke by corporate executives. And when the corporation fails to rebut that inference, it cannot avoid a finding that in personam jurisdiction over it has been acquired. (Sullivan Realty Organization v Syart Trading Corp., 68 AD2d 756.) In keeping with this concept, a process server cannot be expected to know a corporation’s internal practices and, therefore, reliance may be placed on corporate employees to identify the proper person to accept service. (Fashion Page v Zurich Ins. Co., supra.) Thus, when a corporation is regularly doing business in this State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its office, made proper inquiry of the defendant’s employees, and delivered the summons according to their directions. (Fashion Page v Zurich Ins. Co., supra.)
In this case, process was delivered to a person who identified himself as “someone in charge” of the defendant *341 White Eagle. There was no one else to ask. There was no reason for the process server to doubt the truth of that statement. Mr. Hickey had been in White Eagle’s office on at least three prior occasions when the process server called; there was no indication that anyone working in those offices was not a White Eagle employee; and this was emphasized by the fact that Mr. Hickey was alone in that office. He volunteered to accept process, and he never stated he was not authorized to do so. In fact, he indicated the reverse with respect to White Eagle on at least one prior occasion, when he accepted service of process for it from the same process server in another action. Most importantly, White Eagle did not contest that prior service upon it by service upon Mr. Hickey.
After clothing Mr. Hickey with the appearance of an employee, by allowing him to perform an employee’s tasks and leaving him essentially in charge of its offices, and permitting him to accept process, and not contesting service of that process, White Eagle cannot now rely upon the fact that he was not on its payroll. This is particularly so, since, when questioned, he identified himself as in charge.
Based upon the circumstances here, Mr. Hickey heed not have uttered the specific words “managing agent” for the process server to have reasonably concluded that Mr. Hickey, as “someone in charge of the corporation” was its managing agent, or, an agent authorized to accept service of process. Therefore, I find that service here was made in a manner which, when objectively viewed, was calculated to give the corporation fair notice. Therefore, the service should be sustained. (See Fashion Page v Zurich Ins. Co., supra.)
Defendants’ reliance upon Colbert v International Security Bur. (79 AD2d 448) is misplaced. There, the employee upon whom process was served was rarely left alone in the office. Here, Mr. Hickey was the only person in the office most of the time. The employee served in Colbert never had been served with process before. Mr. Hickey had, and defendant had not protested that service. The employee served in Colbert specifically told the process server she was not authorized to accept process. Mr. Hickey did not. He created the reverse impression. He told the process *342 server he was in charge. He told him he could leave the papers and he promised to forward them to the appropriate party (which he did).
Accordingly, I find that in personam jurisdiction over defendant White Eagle was acquired when service of process was made upon Mr. Hickey on February 22, 1982.
Submit order on notice.