**Claire B. BREENE, Plaintiff,**

v.

**GUARDSMARK, INC., Defendant.**

**No. 85 Civ. 6993 (IBC).**

United States District Court,
S.D. New York.

Dec. 8, 1987.

Frank & North, New York City, for Claire B. Breene; Richard Frank, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for Guardsmark, Inc.; Lawrence S. Menkes, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant Guardsmark, Inc. ("Guardsmark") pursuant to Fed.R.Civ.P. 12(b)(5) moves to dismiss plaintiff's complaint on the grounds of improper service. Plaintiff opposes the motion.

Upon the following findings of fact and conclusions of law, defendant's motion for dismissal is denied in all respects.

## BACKGROUND

Plaintiff Claire Bailey Breene commenced this action August 22, 1985 seeking recovery for injuries sustained on September 4, 1982 when plaintiff was allegedly raped at the Time–Life Building. The record reveals that Guardsmark provided security and related services for the premises. Plaintiff alleges that defendant was negligent in failing to provide adequate security. Defendant interposed an answer on September 4, 1985, raising *inter alia* the affirmative defense of lack of personal jurisdiction due to improper service of process.

In view of the conflicting facts presented in the respective motion papers of the parties, we directed that pursuant to Fed.R. Civ.P. 12(d) a hearing be held to resolve the disputed factual issues; the hearing was held on January 20–21, 1987.

### *Findings of Fact*

On August 22, 1985 Doreen Yankopolous ("Yankopolous"), a clerk employed by plaintiff's counsel, attempted service of process upon Guardsmark at its 10 Rockefeller Plaza offices. She was met there by a receptionist/secretary, Rachel Cheruff ("Cheruff") and after a brief discussion (the course of which is disputed) plaintiff contends Cheruff accepted the summons and complaint, signed the litigation back with her name "Rachel G. Cheruff," the

date "8–22–85" and her employer's name "Guardsmark, Inc."

Which version of the discussion between Yankopolous and Cheruff we adopt ultimately hinges on the credibility of the witnesses. We find that plaintiff's witness, Ms. Yankopolous, convincingly presented the most credible version of the events that transpired on that occasion. We find her testimony consistent throughout; we are also impressed by her previous experience as a process server, a fact never before challenged (Tr. at 128).[1] We cannot regard with equal merit the testimony of defendant's witnesses Cheruff and Peter P. Miller ("Miller"), Cheruff's supervisor, since they contradict not only themselves but each other as well.[2]

Yankopolous testified that on the morning of August 22, 1985 she was sent to defendant's regional offices with explicit instructions to use special care in serving process because the Statute of Limitations governing this action was due to expire in the near future. She was familiar with the requirements of effective service, having previously performed this duty on many occasions in the course of her employment. (Tr. at 60). It was her sworn testimony that upon her arrival at defendant's offices she informed Cheruff that she had come for the purpose of serving legal papers and needed the signature of an authorized person acknowledging service. Apparently unfamiliar with this procedure, Cheruff sought instruction from Miller. Cheruff left Yankopolous standing at the receptionist's desk while she disappeared behind the closed door of Miller's office. Cheruff testified that she informed Miller that a woman had come "with some legal papers" and asked how she should handle them. (Tr. at 20). Cheruff asserted that Miller told her that unless it was necessary that the papers be delivered to him personally, she should allow the caller to leave them with her:

> The Court: What did you say to [Yankopolous] as to what he had said to you?

---

1. The letters "Tr." followed by a number indicates pages of the official trial transcript.

2. For example, Cheruff testified she informed Miller that a woman [Yankopolous] had arrived with "legal" papers (Tr. at 30); this she failed to

admit in her previous affidavit dated December 10, 1985; Miller, on the other hand, testified that he had not been informed of this fact at all. (Tr. at 177).

The Witness: That unless he personally needed to come out, she could give them to me, if that was all right with her." (Tr. at 22).

Cheruff was prepared to accept the papers when Yankopolous apparently restated that a signature was needed. Cheruff vigorously denied that Yankopolous stated that an *authorized* signature was needed, (Tr. at 48–9), yet she again sought Miller's advice. This time Cheruff left the door to his office open. (Tr. at 35). Yankopolous testified that she saw a man [Miller] sitting at a table, partially obstructed by Cheruff who was standing in the doorway. Yankopolous heard him say to Cheruff, "You go ahead and sign for it." (Tr. at 63). Upon hearing Miller's statement, Yankopolous testified that she had reason to believe that he had conferred authority upon Cheruff to accept the documents. (Tr. at 139). Cheruff then returned to where Yankopolous was standing, and without further discussion stated that she was authorized to accept and sign for the documents. (Tr. at 64). (As stated hereinabove, Cheruff did sign.) Yankopolous subsequently left the premises and Cheruff delivered the documents to Miller who forwarded them to Guardsmark's Memphis offices. (Tr. at 164).

*Conclusions of Law*

CPLR § 311(1) provides that personal service upon a corporation is effective when delivered "... to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."

For many years a conflict existed between authorities who held that this provision should be strictly construed, and those who favored a more liberal approach. *De Vore v. Osborne*, 78 A.D.2d 915, 432 N.Y.S.2d 919 (1980). This conflict was recently resolved in favor of a liberal interpretation by the New York Court of Appeals in *Fashion Page v. Zurich Insurance Co.*, 50 N.Y.2d 265, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980). "Over the years ... [t]he trend has been to enlarge rather than diminish the list of those who may accept process on behalf of the corporation."

The facts in *Fashion Page* are strikingly similar to what confronts us here. There the process server went to defendant's offices, stated his purpose to the receptionist who directed him to another employee, Ann Robertson. Ms. Robertson told the process server that she could accept the documents, although it was later discovered that she was actually secretary to a vice-president and not expressly authorized to accept service under § 311(1). Despite the fact that she lacked express authorization, service was upheld under an objective standard, in that the corporation was given fair notice of the lawsuit. Addressing this issue, Judge Wachtler stated that "when the corporation is regularly doing business in the state, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." *Id.* at 273, 428 N.Y.S.2d 890, 406 N.E.2d 747.

Examining the language of CPLR § 311, we find that service may be effected on a managing agent of defendant corporation. Managing agent has been defined as "some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it." *Taylor v. Granite State Provident Ass'n*, 136 N.Y. 343, 346, 32 N.E. 992, 993 (1893). Compare this to Miller's testimony of his duties as vice president and manager of the eastern region: "My responsibilities were in the form of general management of the entire eastern region of the company which comprised the territory extending from Maine to Baltimore, Maryland, with some nine branch offices ... So my responsibilities related to profit and loss, budgeting, administrative responsibilities, servicing responsibilities, client contacts. Everything with regard to general management of a company within a particular geographic area." (Tr. at 145).

Clearly, Miller's duties meet our Circuit Court's definition of managing agent with regard to service under § 311; and so plaintiff's attempt to serve Miller meets the statute's requirements.

The court in *Fashion Page* also found that service was effective upon individuals (other than those mentioned in the statute) who indicate authorization to the process server. Such indication is measured by the objective standard of a reasonable person in a similar circumstance. "[T]he process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service." *Id.*

When Yankopolous arrived at defendant's offices, Cheruff was the only employee there to direct her. After hearing Miller instruct Cheruff to accept the papers, it was certainly reasonable for Yankopolous to rely on Cheruff's representations that she had such authority despite the fact that Cheruff first sought Miller's advice. As affirmed in another recent case, "[t]hat she first went to look for someone else in charge of the office to accept service is not necessarily an indication that in their absence she was without authorization. The process server was not required to make further inquiry but rather was entitled to rely on the receptionist's representation of authority." *Kuhlik v. Atlantic Corp., Inc.,* 112 F.R.D. 146, 148 (S.D.N.Y.1986).

Since the 1980 decision in *Fashion Page,* many courts have followed its precedent by construing § 311 liberally. *See e.g., Central Savannah River v. White Eagle Int'l.,* 117 Misc.2d 338, 458 N.Y.S.2d 167 (Sup.Ct. Nassau Cty.1983) (service upheld where process server relied on corporate employees to identify proper person to accept service); *Von Thaden v. S.J. Groves & Sons Co.,* 97 A.D.2d 677, 469 N.Y.S.2d 172 (3d Dept.1983) (service upheld on individual to whom server was directed, where process server identified himself and stated his purpose); *Leo v. General Electric Co.,* 111 F.R.D. 407 (E.D.N.Y.1986) (service of process upheld on secretary who declared that she could accept service of process for branch manager unavailable at the time); *Kuhlik v. Atlantic Corp. Inc., supra* (service of process upheld on receptionist who stated that she could accept such papers.)

The courts have emphasized that the purpose of § 311 has not been rendered meaningless by this increasingly broad reading of the statute. Instead, it illustrates their determination to prevent a corporation from asserting such technicalities as strategy to dismiss suits against them entirely. "A mature jurisprudence should not tolerate such procedural waste and miscarriage of justice." *Jacobs v. Zurich Ins. Co.,* 53 A.D.2d 524, 526 (1st Dept.1976). The New York Court of Appeals unequivocally stated in *Fashion Page* that "[t]he purpose of CPLR § 311(1) is to give the corporation notice of the commencement of the suit ... If service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." 50 N.Y.2d at 271–272, 428 N.Y.S.2d 890, 406 N.E.2d 747.

As the hearing testimony reveals, after Yankopolous left the papers with Cheruff they were promptly given to Miller, who then forwarded them to Guardsmark's corporate offices. In accordance with the Second Circuit's standard, the process server had acted reasonably under the circumstances, and Guardsmark received fair notice of the action initiated against it. Thus, we find no basis for quashing service in the instant action.

Defendant argues that we should construe § 311 strictly. They assert that Cheruff was not authorized to accept service and therefore it was invalid. Defendant emphasizes that Cheruff was only temporarily assigned to the Rockefeller Plaza offices of Guardsmark, and that this should be viewed as evidence of her lack of authority, which Yankopolous failed to ascertain. Yet, Cheruff testified that she was a regular employee of Guardsmark. Moreover, defendant fails to point out that at the present time Cheruff is authorized to accept service on behalf of Guardsmark.

Q: Prior to August 22, 1985, had you ever been presented with a summons and complaint?

A: No.

Q: Have you since that date ever had the occasion to be presented with a summons

or a complaint or any sort of legal papers on behalf of the company?

A: Yes.

(Tr. at 25).

Clearly, this testimony is indicative of defendant's usual practice of allowing support staff to accept process on behalf of the company.

Other courts have recognized that in particular situations service is acceptable on support staff: "It is certainly not exceptional for a company to designate a receptionist or secretarial worker to accept service nor is it unknown for a process server to be informed that legal papers should be deposited with the receptionist or secretary." *Cerrato v. Thurcon Const. Corp.*, 92 A.D.2d 89, 92, 459 N.Y.S.2d 765, 768 (1st Dept.1983). Defendant has utterly failed to persuade this Court that Cheruff lacked authority in this instance, in light of Miller's instructions that she could sign for the documents.

In resolving the issues raised by this motion we must "consider the pleadings and affidavits in the light most favorable to the plaintiff who is the non-moving party." *Top Form Mills v. Sociedad Nationale, Ind.*, 428 F.Supp. 1237, 1241 (S.D.N.Y. 1977). Plaintiff's arguments are well-supported with consistent testimony and relevant case law. Defendant, however, fails to prove that its position is legally supported. Instead, defendant focuses on attacking the accuracy of the process server's memory. Defendant attempts to distinguish *Fashion Page* by limiting it to its particular facts, without presenting support for its position by showing that any court has similarly restricted the scope of its precedent.

Defendant relies on three distinguishable cases without successfully illustrating their significance to the instant action: *McDonald v. Ames Supply Co.*, 22 N.Y.2d 111, 291 N.Y.S.2d 328, 238 N.E.2d 726 (1968) (decided twelve years before *Fashion Page*), a case in which the court found that careless service of a summons upon a receptionist, who later delivered it to the proper person, did not meet the requirements of CPLR § 311(1). As Judge Breitel

noted, "there [was] no evidence of due diligence on the part of the process server . . . To sustain such service would encourage carelessness, or worse, thus increasing the risk of default by parties who in fact fail to receive the summons." 22 N.Y.2d at 116, 291 N.Y.S.2d 328, 238 N.E.2d 726. The evidence in the instant action does not indicate any carelessness or lack of due diligence by the process server; in fact, Yankopolous testified convincingly that she took special care in serving process in this case, since she was aware that the Statute of Limitations governing this action was due to expire in the near future.

Defendant also cites two recent cases involving service of process on an individual named defendant. In *Macchia v. Russo*, 567 N.Y.2d 592, 505 N.Y.S.2d 591, 496 N.E. 2d 680 (1986), the court found that the process server failed to act reasonably when he served process on defendant's son, believing that he was the proper party to serve. In *Raschel v. Rish*, 69 N.Y.2d 694, 512 N.Y.S.2d 22, 504 N.E.2d 389 (1986), the court held that service on defendant hospital did not constitute service on defendant doctor as well. Defendant's reliance upon these cases to support its position is misplaced, since both cases dealt with the process server's lack of diligence in ascertaining whether the correct party was being served. We find that Yankopolous did diligently serve Guardsmark with service of process and, therefore, the cases cited by defendant have no bearing on the matter before us.

■ Although we hold that service was valid based upon the facts in this case, we also find merit in plaintiff's alternative argument that service was effected when Cheruff accepted the papers and redelivered them to Miller shortly after Yankopolous left the premises. Courts have recognized that in such instances, where the redelivery is "so close in both time and space . . . it can be classified as part of the same act." *Green v. Morningside Heights Housing Corp.*, 13 Misc.2d 124, 125, 177 N.Y.S.2d 760 (Sup.Ct.N.Y.Co.1958), *aff'd*, 7 A.D.2d 708, 180 N.Y.S.2d 104 (1st Dept. 1958). Recent cases have espoused a similar viewpoint. *Leo v. General Elec. Co.*, 111 F.R.D. 407 (E.D.N.Y.1986); *Von Tha-*

*den v. S.J. Groves & Sons Co.,* 97 A.D.2d 677, 469 N.Y.S.2d 172 (3d Dept.1983); *Central Savannah River v. White Eagle Int'l.,* 117 Misc.2d 338, 458 N.Y.S.2d 167 (Sup.Ct. Nassau Cty.1983).

Under the circumstances of this case, Cheruff was the only employee Yankopolous could possibly serve since Miller was occupied in a meeting and instructed Cheruff to sign for the documents. Since Cheruff promptly redelivered the documents to Miller after Yankopolous left, the acceptance of the papers by Cheruff and subsequent redelivery to Miller can be viewed as part of the same act, which was effective in affording ample notice to Guardsmark of the pending action.

Defendant's arguments critical of this redelivery doctrine are unconvincing, in light of the recent case law which recognizes the validity of this practice.

As a final note, we briefly address defendant's post-hearing claim that plaintiff failed to serve the proper corporate entity in this action in addition to failing to serve the proper party. At the outset, we note that defendant failed to address this issue at the hearing; it was raised for the first time in defendant's reply memo of April 17, 1987—fully three months after the hearing closed. What is even more astonishing is the fact that the testimony of all three witnesses (Yankopolous, Cheruff and Miller) at the January, 1987 hearing blatantly contradicts this contention. As plaintiff aptly notes in its Surreply memo of April 28, 1987, Cheruff testified she was employed by Guardsmark, Inc. (Tr. at 13), Miller testified to his employment by Guardsmark, Inc. (Tr. at 144), and Yankopolous testified to going into the office marked "Guardsmark, Inc." (Tr. at 62). Moreover, Miller testified at the hearing that the difference between the two corporate entities was "merely a geographic distinction." (Tr. at 145). For the purposes of the motion before us, we are not obliged to rule on the issue of Guardsmark, Inc.'s corporate structure, since under either position we find defendant's claim to be without merit.

If, as Miller testifies, the difference between the two entities is merely geograph-ic, service was proper as plaintiff had intended. Service was also valid if the entity served was actually a wholly-owned subsidiary, since "[e]ffective service on a foreign corporation may be accomplished by delivery to a corporate agent, or to a subsidiary corporation." Weinstein, Korn & Miller, 1 New York Civil Practice ¶ 311.05, citing *Geffen Motors Inc. v. Chrysler Corp.,* 54 Misc.2d 403, 283 N.Y.S.2d 79 (Sup.Ct.Oneida Cty.1964).

We find that defendant received fair notice of service under an objective standard, and that plaintiff acted reasonably in attempting to serve the proper party.

For the foregoing reasons, we conclude that service of process upon defendant Guardsmark was proper. Accordingly, the motion by defendant to dismiss the complaint is denied in all respects.

SO ORDERED.