50 N.Y.2d 265 (1980)
Fashion Page, Ltd., Respondent,
v.
Zurich Insurance Company et al., Appellants, et al., Defendants.
Court of Appeals of the State of New York.
Argued February 6, 1980.
Decided April 29, 1980.
Lawrence F. Landgraff and Ira J. Greenhill for appellants.
James Sawyer for respondent.
J. Bruce Byrne for Paragon Process Service Co., Inc., and another, defendants.
Chief Judge COOKE and Judges JASEN, JONES, FUCHSBERG and MEYER concur with Judge WACHTLER; Judge GABRIELLI concurs in a separate opinion.
*269 WACHTLER, J.
The question in this case is whether a corporation was properly served pursuant to CPLR 311 (subd 1) when the process server delivered the summons to the vice-president's secretary, who had been identified by the defendant's receptionist and the secretary herself as a person authorized to accept service for the corporation. The Supreme Court held that under the circumstances the service was valid. The Appellate Division affirmed and granted the defendant leave to appeal to this court on a certified question as to the correctness of the Supreme Court's determination.
The action is to recover on a fire insurance policy issued by the defendant, a foreign corporation authorized to do business in this State with offices at William Street in Manhattan. The complaint alleges that a building owned by the plaintiff and insured by the policy was destroyed in a fire on December 30, 1975. The plaintiff, allegedly, submitted a claim for over $225,000 which the defendant "failed or refused" to pay.
The action was commenced on December 13, 1976 by service of a summons and complaint at defendant's office in Manhattan. On December 31, 1976 the defendant moved to dismiss on the ground that the person to whom the summons was delivered, Ann Robertson, was a secretary to the vice-president and not a managing agent or other person authorized to accept process on behalf of the corporation pursuant to CPLR 311 (subd 1).
At a hearing before a Special Referee, the process server testified that he went to the William Street address at approximately 12:45 on December 13, 1976. The building directory indicated that the defendant's offices were located on the third floor. When he arrived at the defendant's offices he went to the receptionist and stated: "I have a summons and complaint to serve on Zurich. Can you please tell me who I might see or who handles this." The receptionist told him to proceed down a certain corridor and "see the girl sitting down there." He did as directed and found Ann Robertson sitting at a desk. He told her that he had a summons and complaint to serve on *270 Zurich. She asked to see the papers and, after looking them over, said "Okay, leave it with me * * * I'll take it." When he asked her if she was authorized "to accept this", she stated "I can take it."
It was conceded that the receptionist and Ann Robertson were employed by the defendant for many years at its New York office, where there were over 100 employees. The receptionist testified that she was responsibile for directing visitors to the proper person within the office. Ann Robertson stated that she was the executive secretary for Joseph Scanlon, who was a member of the board of directors and the vice-president in charge of the New York office. Although she was the only executive secretary at that office and apparently had some independent authority over certain "files" and correspondence, she said that she was not an officer or managing agent of the corporation and had not been expressly authorized to accept service on its behalf.
She admitted, however, that she had received the summons and complaint in this case and that she had informed Mr. Scanlon of this when he returned from lunch. At his direction she had forwarded the papers to the company's legal department by interoffice mail. She also admitted that she had regularly done this without objection for at least five years, whenever Mr. Scanlon was not in his office. As a result, during that period about half of the summonses brought to his office had been accepted by her. Her testimony on these points was confirmed by Mr. Scanlon.
There was some dispute between the defendant's witnesses and the process server concerning the statements made at the time of service. The Referee, however, accepted the process server's "version of the facts as to the manner in which the summons was delivered." He concluded that the process server had acted with diligence and had served the summons in a manner which was calculated to, and did, give the defendant fair notice, when he served the person identified by the defendant's employees as the party authorized to accept service for the corporation. He also found that although Ann Robertson's job title was that of an executive secretary, "the actual duties performed by her included those of being a managing or general agent for the service of process." The Supreme Court confirmed the Referee's report and denied the defendant's motion to dismiss.
The Appellate Division affirmed concluding that under the *271 circumstances Ann Robertson was "an `agent authorized by appointment * * * to receive service'". (69 AD2d 787.)
CPLR 311 (subd 1) provides that personal service upon a corporation, foreign or domestic, shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service".
The defendant urges that Ann Robertson cannot be said to be a managing agent because she did not possess "general powers involving the exercise of judgment or discretion" (Taylor v Granite State Provident Assn., 136 N.Y. 343, 346). It also argues that she cannot be considered an agent "by appointment", because she was never expressly authorized to accept process for the corporation. Indeed the defendant claims that an agent "by appointment" must also be an agent "designated" for receipt of process pursuant to CPLR 318, which requires that the designation be in writing, acknowledged by the agent and filed with the county clerk.
The history and purpose of CPLR 311 (subd 1), indicates, however, that it should not be read in such a narrow and technical manner.
Over the years the Legislature has identified a large group of corporate personnel as agents for receipt of process. The summons may, of course, be served on any director or corporate officer, which includes the president, vice-president, secretary, assistant secretary, clerk of the corporation, treasurer, assistant treasurer or other persons "denominated by the corporation as officers" (1 Weinstein-Korn-Miller, NY Civ Prac, par 311.02). It may also be delivered to employees of lesser rank who, under a variety of titles, act as managing or general agents for the corporation (see, e.g., Barrett v American Tel. & Tel. Co., 138 N.Y. 491; Tauza v Susquehanna Coal Co., 220 N.Y. 259; cf. Coler v Pittsburgh Bridge Co., 146 N.Y. 281, 283). The trend has been to enlarge rather than diminish the list of those who may accept process on behalf of the corporation. When the CPLR was adopted in 1963, the Legislature added to the list the "cashier or assistant cashier or * * * any other agent authorized by appointment or by law to receive service" (see 1 Weinstein-Korn-Miller, op. cit., par 311.02). The statute, of course, should be liberally construed (CPLR 104).
The purpose of CPLR 311 (subd 1) is to give the corporation notice of the commencement of the suit (Barrett v American Tel. & Tel. Co., supra; *272 Tauza v Susquehanna Coal Co., supra). Delivery of the summons to the officials or employees designated by the Legislature fulfills the statutory aim since their "positions are such as to lead to a just presumption that notice to them will be notice to the * * * corporation" (Tauza v Susquehanna Coal Co., 220 N.Y. 259, 269, supra [CARDOZO, J.]). The presumption is unnecessary when the summons is served on a person the corporation itself has selected to accept service on its behalf. The corporation is free to choose its own agent for receipt of process without regard to title or position.
A corporation may appoint an agent to accept service without observing the formalities necessary to "designate" an agent pursuant to CPLR 318. Designation is merely a type of appointment which might, under certain circumstances, offer special benefits to the corporation or principal. The practical effect of the designation "is to prevent the statute of limitations from tolling if the defendant should leave the state" (Siegel, New York Practice, § 73). A corporation or individual temporarily doing business in the State can file the designation and leave without fear of having to defend stale claims upon return. The procedure is less useful now that the departing defendant is generally subject to long-arm jurisdiction which alone prevents the tolling of the statute (see Siegel, ibid.). In any event the designation procedure is optional. It is not the only way of appointing an agent for receipt of process (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C318:1). Notably CPLR 311 (subd 1) does not require that this be done with any particular formality.
Thus a corporation may assign the task of accepting process and may establish procedures for insuring that the papers are directed to those ultimately responsible for defending its interests. A process server may, of course, always serve the corporate personnel specifically identified in the statute. The corporation however cannot escape the consequences of establishing alternative procedures which it may prefer. In such a case the process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service. In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained (cf. McDonald v Ames Supply Co., 22 N.Y.2d 111; *273 see, also, Belofatto v Marsen Realty Corp., 62 Misc 2d 922).
In evaluating whether service is to be sustained, the circumstances of the particular case must be weighed. Delivering the summons to a building receptionist, not employed by the defendant, without any inquiry as to whether she is a company employee, would not be sufficient. Such service cannot be upheld even though the receptionist may later deliver the summons to the proper party. "To sustain such service would encourage carelessness, or worse, thus increasing the risk of default by parties who in fact fail to receive the summons" (McDonald v Ames Supply Co., supra, p 116). Nor is it always reasonable, under all circumstances, for the process server to rely on claims of authority made by the defendant's employees. For instance, a remark made by an employee, temporarily visiting the State, that he represents the corporation has been held insufficient to establish his authority to accept process on its behalf (Coler v Pittsburgh Bridge, Co., supra). But when the corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions.
There may be cases in which the defendant's employees improperly assumed authority to accept process which the process server, through past experience or present circumstances, should reasonably perceive. In this case, however, much like those cases involving apparent authority, there is ample evidence to support the determination that he acted reasonably in serving the summons as he did. Certainly it was reasonable for him to rely on the receptionist to direct him to the appropriate person once he had announced his purpose to serve the summons. The receptionist was in the defendant's office presumably employed by the company to greet visitors and properly direct them. Indeed her apparent knowledge of the proper procedure was soon confirmed when the person to whom she referred the process server acknowledged authority to accept process on behalf of the corporation. It is hard to imagine that the receptionist and the person who took the summons would both be ignorant of the established or accepted procedure for handling process servers, particularly in view of the fact that they were employed by an insurance *274 company which must be involved in litigation with some degree of regularity. If despite these circumstances the summons was in fact served on the wrong person, the fault lies with the defendant, and not with the process server who did all that he should be expected to do to see that it was properly delivered.
Accordingly, the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
GABRIELLI, J. (concurring).
I concur in result, since I agree that the Appellate Division did not err in concluding, upon the record before it, that Mrs. Robertson was impliedly appointed an agent for purpose of receiving service of process upon the corporation (CPLR 311, subd 1; cf. 318). Because an affirmance can be premised upon this well-established statutory ground in accord with traditional principles of law, it is inappropriate and unnecessary for the court to engage in an expansive discussion of principles of due diligence that have little or no application to this type of service of process.
I find the majority's apparent emphasis upon the reasonableness of the process server's behavior rather than upon his ultimate success in serving process upon a proper party disturbing. Delineation of the proper means of commencing an action by service of process is a matter for the Legislature, and should not be varied by the courts as long as the requisites of due process are fulfilled. In this State, service upon a corporation is, to a large extent, governed by CPLR 311 (subd 1) (see, also, Business Corporation Law, §§ 304, 306, 307), which in plain language requires that process actually be delivered to any one of several listed corporate representatives. Since actual delivery to the proper person is the criterion established by the statute, delivery to a corporate employee not listed in CPLR 311 (subd 1) will not normally provide personal jurisdiction over the defendant corporation (see McDonald v Ames Supply Co., 22 N.Y.2d 111; Isaf v Pennsylvania R. R. Co., 32 AD2d 578; see, also, Ives v Darling, 210 App Div 521), regardless of the reasonableness of the process server's endeavors.
It is, of course, true that actual delivery may be excused in certain extraordinary situations in which the process server is unable to hand the summons to the proper party because of an affirmative attempt to evade service (see, generally, McDonald v Ames Supply Co., 22 NY2d, at p 115, supra). *275 Thus, a corporation which instructs its agents to attempt to prevent proper service by misleading a process server could not so readily subvert the "duty upon persons within the jurisdiction to submit to the service of process" (Gumperz v Hofmann, 245 App Div 622, 624, affd without opn 271 N.Y. 544). Similarly, it may well be that a corporation is to be estopped from denying the propriety of service when performed in accord with the directions of a corporate agent possessed with actual or apparent authority to direct a visitor to the proper person. In all such cases, however, service is to be deemed complete because the lapse is caused by the improper behavior of the recipient, and not because the process server acts reasonably or with due diligence.
I cannot concur in the majority opinion because it appears to sustain service not as a result of actual delivery to the proper person, nor because of any attempt to evade service by the corporation or any other misconduct by a corporate agent which could sustain an estoppel against the corporation, but rather solely on the ground that the process server has acted reasonably. Such an analysis accords with neither precedent nor logic and will only have the unfortunate result of encouraging sloppy service and creating unnecessary litigation over the validity of that service. The primary responsibility for ensuring proper service is upon the plaintiff and his agent, the process server. CPLR 311 (subd 1) sets forth a means of service upon a corporation which is both simple and readily followed. The only question which should normally be involved in determining whether service was proper is whether the mandates of the statute were followed and the proper person served. If these conditions are not met, that failure will generally be the responsibility of the process server and will operate to the detriment of his principal, the plaintiff. I see no justification for beclouding this inquiry by making it turn upon the less than precise standard of reasonableness promulgated by the majority, for such can only encourage attempts to retroactively revive failed attempts at service by later claims that under the circumstances the process server acted reasonably. If the validity of service is to turn upon the diligence and good faith of the process server, rather than upon his success in serving process, such a change in the law should be accomplished by the Legislature, and not decreed by this court.
*276 At any rate, in the instant case there exists no need to create or apply such an extraordinary ameliorative doctrine, for the record amply supports the determination made by the Appellate Division that Mrs. Robertson was at least impliedly appointed a corporate agent for receipt of process.
Order affirmed, with costs. Question certified answered in the affirmative.