opinion of the court
Daniel F. Luciano, J.
Motion by the plaintiff to reargue, having been granted by this court on April 28, 1982, is considered on its merits and upon such consideration the court adheres to its prior determination that the County of Suffolk shall be the place of trial. The cross motion by the defendant to dismiss the complaint on the ground that the summons and complaint were not properly served is denied. All requests for costs are denied.
This matter is before the court on the plaintiffs’ application to have the venue of the action returned to Kings County and the defendant’s cross motion seeking dismissal of the complaint.
This action was commenced to recover damages resulting from personal injuries suffered by the infant plaintiff *683 while roller skating at the defendant’s rink in Centereach, Suffolk County, New York. The plaintiffs, who are residents of Suffolk County, originally chose Kings County as the place of trial.
The defendant’s answer includes an affirmative defense of lack of jurisdiction “on the grounds that the service of process was improper”.
The defendant also sought an order directing a change of venue from Kings County to Suffolk County. Predicating its decision on the plaintiffs’ failure to submit an affidavit by anyone with personal knowledge of the facts, this court, in an order dated February 22, 1983, granted the motion seeking the change of venue.
Thereafter the plaintiffs moved to reargue. The defendant opposed reargument and cross-moved for an order dismissing the complaint on the ground that the summons and complaint had not been properly served.
In an order dated April 28, 1983 this court granted the motion to reargue but. adjourned further consideration of the merits of the pending motions. The order directed the defendant to establish its residence by appropriate documentation. On the adjourned date of the motion the defendant submitted a copy of its application for authority under section 1304 of the Business Corporation Law which reflected that the defendant is a resident of New York County. Since the proof submitted establishes that the defendant is not a resident of Kings County (Di Giovanni v Pepsico, Inc., 91 AD2d 519; Kochany v Chrysler Corp., 67 AD2d 637; United Credit Corp. v Le Roy Adventures, Inc., 61 AD2d 742; General Precision v Ametek, Inc., 24 AD2d 757), the plaintiffs’ choice of venue in that county is improper. The effect of this is that the right to choose a proper place of trial has been forfeited to the defendant. (Siegel, NY Prac, § 123.) The defendant’s choice of Suffolk County as the place of trial is a proper choice since the plaintiffs are Suffolk County residents. (CPLR 503, subd [a].)
Thus, upon reconsideration of the merits the court adheres to its determination that the County of Suffolk shall be the place of trial.
The defendant’s cross motion to dismiss raises a more difficult issue. The motion is based upon the assertion that, *684 “the person upon whom the plaintiff claims to have served a copy of the summons and complaint, Frank Galludo, was not on the date at which service is alleged to have been made, November 16,1982, in the Control of united skates of America, inc. nor was he authorized to accept service on behalf of the defendant corporation.”
The defendant does not seem to dispute that the summons and complaint were served upon one Frank Galludo at a roller skating facility located at 6002 Fort Hamilton Parkway, Brooklyn, New York, which represented itself to the public as United Skates of America, Inc. Rather, the defendant contends that the facility in Brooklyn was not one belonging to the defendant. It was instead the property of a New York corporation known as New Skates, Inc. (New Skates).
The defendant does not allege any wrongdoing by New Skates since that corporation was using the name United Skates of America, Inc., pursuant to a licensing agreement whereby the defendant agreed that its name could be used by New Skates at the 6002 Fort Hamilton Parkway skating facility. The licensing agreement had been executed as part of a business transaction in which the defendant assigned its lease for the Brooklyn skating rink and sold its property thereat to New Skates.
Based upon the contentions that the defendant was not the operator of the facility on the date of service of the summons and complaint and that Frank Galludo was not under the defendant’s control on that date nor an agent of the defendant it is alleged that service was not made upon a proper person on behalf of the defendant corporation.
The plaintiffs argue that service was sufficient because when the summons and complaint were delivered “no protest was made to the process server, that in fact the party accepting service did forward the summons and complaint to the defendant United Skates of America, Inc. and that the United Skates of America, Inc., through its insurance carrier and through attorneys appeared in this action”. These factual assertions are not controverted. It is further contended (albeit in regard to the plaintiffs’ contention that Kings County is the proper place of trial) that the defendant “is holding itself out as operating in Brook *685 lyn or at the very least permitting the public * * * to believe that it is operating in Brooklyn.” Submitted advertising circulars support this contention since they encourage patronage at the 6002 Fort Hamilton Parkway rink and boldly assert that such facility is that of United Skates of America, Inc. Indeed, pursuant to the agreement transferring operation of the Brooklyn facility the defendant agreed, in part, as follows: “At no expense to Buyer [New Skates], except as hereinafter set forth, Seller [the defendant] shall furnish merchandising and management assistance, so as to aid in making the operation of the business at the Rink as profitable and successful as possible, and will provide to Buyer all materials, advertising, programs and other paraphernalia provided by Seller to other roller skating rinks owned or operated by Seller.”
Although not referred to as such it appears that New Skates is a franchisee of the defendant, at least in the broad sense of that term. (See, generally, Ann., 41 ALR3d 1436, n 2.)
CPLR 311 (subd 1) sets forth who may be served on behalf of a corporation: an officer, director, managing or general agent, or cashier or assistant cashier, or any other agent authorized by appointment or by law to receive service.
The issue presented is whether, by its authorization permitting its franchisee to conduct business in the franchisor’s name, the franchisor effectively appointed an appropriate employee of the franchisee as an agent authorized to receive service.
It is a clearly established rule that personal delivery of a summons to the wrong person does not constitute valid service, even if the summons shortly thereafter comes into the possession of the person the plaintiff intended to serve. (McDonald v Ames Supply Co., 22 NY2d 111; Schuck v 7309 Corp., 90 AD2d 828.) Further, it has been said that “[s]ervice upon an outsider will not suffice even though the outsider thereafter conveys notice to the corporation.” (De Candia v Hudson Waterways, 89 AD2d 506, 507; Calloway v National Servs. Inds., 93 AD2d 734.)
Notwithstanding these principles the court concludes that service in the present action must be sustained.
*686 CPLR 311 (subd 1) has been given an expansive reading and it is to be liberally construed; its purpose is to give the corporation notice of the commencement of the suit. (Fashion Page v Zurich Ins. Co., 50 NY2d 265, 271.)
In Fashion Page v Zurich Ins. Co. (supra, pp 272-273), the court said: “a corporation may assign the task of accepting process and may establish procedures for insuring that the papers are directed to those ultimately responsible for defending its interests. A process server may, of course, always serve the corporate personnel specifically identified in the statute. The corporation however cannot escape the consequences of establishing alternative procedures which it may prefer. In such a case the process server cannot be expected to know the corporation’s internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service. In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained”.
For example, in Central Savannah Riv. Area Resource Dev. Agency v White Eagle Int. (117 Misc 2d 338), the court found service to be sufficient although the individual served was not an employee of the corporate defendant. That individual was a former employee, had accepted service on prior occasions, was found in the defendant’s office and did not indicate to the process server that he was not a person authorized to accept service for the defendant, although at the time of service he was employed by another corporation which merely shared the defendant’s office. Citing Fashion Page v Zurich Ins. Co. (supra), the court concluded that the process server could not be expected to know the corporate defendant’s internal practices and, thus, found service to be sufficient.
Assuming the facts to be as stated by the defendant, it seems that any confusion on the part of the process server regarding the identity of the corporation served was the result of the defendant’s agreement to permit another to use its corporate name.
Although section 130 (subd 1, par [b]) of the General Business Law provides for the filing of certificates by corporations carrying on, conducting or transacting busi *687 ness in other than their corporate name, the court cannot conclude that the question of whether New Skates ever filed such a certificate is a relevant inquiry on this motion. Rather, the focus is upon “alternative procedures” which the corporate defendant “may prefer”. Along with any benefits which may inure to the defendant by the licensing of the use of its corporate name is the “consequence” that it is responsible for the process server’s mistaken, although objectively reasonable, impression that he had delivered the summons and complaint to a facility of the United Skates of America, Inc. As Judge Gabrielli observed in his concurring opinion in Fashion Page v Zurich Ins. Co. (supra, p 274), the majority opinion in that case did not limit its inquiry to the process server’s ultimate success in serving process upon a proper party, but emphasized the reasonableness of the process server’s behavior.
The court is aware of only one other case involving this issue. In Arthur Murray, Inc. v Smith (124 Ga App 51) the Court of Appeals of Georgia determined that service upon the president of a franchisee was not sufficient service upon the franchisor. That case, however, is readily distinguishable from the present case. First, it is clear that the plaintiff therein was aware that both a franchisor and franchisee were involved since the actions against both were brought in their proper names. Moreover, that case was not a decision construing New York’s Civil Practice Law and Rules provision and was not bound by the guiding principles of the Fashion Page decision.
In addition, the Georgia court examined the question as one of agency and control, to wit: funding, hiring practices, no sharing of profit.
But those questions, which are relevant to the issue of the franchisor’s liability for the acts of its franchisee (see Ann., 81 ALR3d 764) are not necessarily the proper inquiries when the issue is merely one of notice. The law of New York, as this court reads Fashion Page v Zurich Ins. Co. (supra), is that service on a corporation is sufficient if the process server, reasonably acting in reliance on the corporation’s acts, makes service in a manner which, objectively viewed, is calculated to give the corporation fair notice.
*688 Thus, the court concludes that a corporation cannot evade jurisdiction when it has created the impression that the person served was a proper person to receive service. (Cf. Weston Banking Corp. v Turkiye Garanti Bankasi, 57 NY2d 315, 327, citing Fashion Page v Zurich Ins. Co., 50 NY2d 265, supra [“The language of the note is broad enough to be reasonably interpreted to indicate an intention on the part of the parties that Chemical Bank serve as the agent for all aspects of this transaction including for service of process * * * Since the service of process was made pursuant to the implicit direction of the promissory note itself, the defendant cannot now claim to have been improperly served.”])
The present case is distinguishable from a case such as Boser v Burdick (62 AD2d 1134), where an employee of “a corporation distinct from defendant, which had purchased some of defendant’s assets and equipment” was served. There the process server was advised by the person served that he was not an employee of the defendant corporation. The court therefore concluded that the process server did not act reasonably or with due diligence since it was clear that the person served had no relationship with the corporate defendant.
In the present case it is the defendant’s own agreement to permit another corporation to use its name which created the process server’s mistaken impression. Nothing before the court suggests that the process server did not act reasonably or that he acted without due diligence.
The State of New York has expressed its disapproval of the deceptive use of a corporate name by making any such deliberate deception a misdemeanor. (General Business Law, § 133.) Moreover, the Secretary of State may refuse to permit a corporation to adopt a name which tends to confuse or deceive, even in the absence of any intent to do so. (Matter of Boufford Co. v Lomenzo, 38 AD2d 986.)
Here the corporate defendant seeks to avoid liability after it permitted the use of its corporate name in a way which misled the plaintiffs who acted reasonably in relying upon the public display of that name. The court need not ascribe any evil motive to the defendant to conclude that it cannot escape the consequences of its voluntary actions.
*689 The affidavit of service of the summons and complaint identifies Frank Galludo as the “managing agent” at the facility at which he was served. The defendant has not controverted this assertion regarding the nature of Frank Gallucio’s position. That the defendant actually received adequate notice is evidenced by its active participation in this action. Thus, these are not issues requiring further resolution.
Since the defendant’s argument is predicated on the fact that it is no longer the owner or operator of the 6002 Fort Hamilton Parkway skating facility and because the court has concluded that, even accepting that assertion as true, service upon Frank Galludo was sufficient service on the defendant, no hearing is required on this issue. (See De Vore v Osborne, 78 AD2d 915.)
Accordingly, the motion to dismiss on the ground that the summons and complaint were not properly served on the corporate defendant is denied.