OPINION OF THE COURT
Marcy Friedman, J.
This is a commercial holdover proceeding to recover possession of a parking garage. After a traverse hearing, the court holds that the prepetition notice of termination and the petition were properly served.
The facts of service are not in dispute. Both papers were served by delivery to a parking attendant at the garage, with follow-up mailings to the corporation. When the notice of termination was handed to the attendant, he let it drop to the floor and indicated to the process server that he did not want to accept service. When the petition was handed to this same attendant, he took it without objection. Respondent does not challenge the mailings, but contends that service of both papers was invalid because the parking attendant was not authorized to accept service on behalf of the corporation. Respondent also argues that the process server failed to make a proper inquiry as to whether the attendant was authorized or willing to accept the service.
This case requires application of the standards for substitute service on a corporate respondent in a summary eviction proceeding. Notwithstanding the frequency with which this method of service is employed, these standards remain the subject of considerable dispute and confusion among the practicing bar.
Service of papers in summary eviction proceedings is governed by RPAPL 735 (1). This statute permits service of the papers by personal delivery or by substitute service or, if upon reasonable application personal delivery or substitute service *979 cannot be made, by conspicuous place service.[1] Conspicuous place service is the least desirable of the three methods, and may not be used until reasonable application has been made to effect service by one of the two preferable methods. (Eight Assocs. v Hynes, 102 AD2d 746, affd 65 NY2d 739 [1985].) As is the case for service of papers in plenary actions under CPLR 308, personal delivery and substitute service are on an equal footing, and personal delivery need not be attempted before resort is made to substitute service. (Hospitality Enters. v Fuego Rest. Corp., NYLJ, June 5, 1980, at 11, col 4 [App Term, 1st Dept]; 525 Park Ave. Assocs. v Kwit, NYLJ, July 15, 1987, at 11, col 1 [App Term, 1st Dept]; see, Eight Assocs. v Hynes, supra, 102 AD2d, at 748.)
Personal delivery to a corporate respondent under RPAPL 735 (1) must comply with CPLR 311 (1) (Milchman v Wonderful Discount Ctr., NYLJ, Jan. 5, 1993, at 22, col 4 [Civ Ct, NY County]), which permits the corporation to be served by delivery of the papers to the enumerated corporate officials or to "any other agent authorized by appointment or by law to receive service.” Delivery of papers to a mere employee, without any inquiry as to the employee’s status in the corporate hierarchy or any effort to determine whether the employee is authorized to accept service, is therefore insufficient to effect personal delivery on the corporation (unless, by some stroke of fortune, the employee turns out to be an authorized agent or enumerated corporate official). (See, Fashion Page v Zurich Ins. Co., 50 NY2d 265 [1980].)
In the instant case, personal delivery to the corporate respondent was not effected by delivery of the papers to the garage attendant, as he was concededly not a corporate representative listed in CPLR 311 (1), and he was not shown to have been otherwise authorized to accept process. However, petitioner does not purport to have made service by personal *980 delivery, but rather claims to have resorted directly to substitute service, as RPAPL 735 (1) permits. Petitioner was therefore permitted to deliver the papers to any person of "suitable age and discretion” who was employed at the property. (RPAPL 735 [1].)
Petitioner takes the position that this substitute service provision permits delivery of the petition to any adult who is employed at the premises and is of apparently sound mind. Respondent contends that a process server has an obligation under RPAPL 735, akin to that under CPLR 311, to inquire whether a corporate official is available to take service and whether the employee, if not a corporate official, is authorized to accept service on behalf of the corporation. The law lies in between.
The RPAPL substitute service provision reflects the legislative determination that due process notice requirements for service on a corporation in an eviction proceeding are satisfied by service on an ordinary employee, as opposed to a CPLR 311 (1) corporate representative, who is of "suitable age and discretion.” (See, City of New York v Wall St. Racquet Club, 136 Misc 2d 405 [Civ Ct, NY County 1987].) Notwithstanding this general legislative determination, when a particular service is challenged, a court must evaluate the validity of that service under the constitutional standard of whether the service "is one 'reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action.’ ” (See, Bossuk v Steinberg, 58 NY2d 916, 918-919 [1983], quoting Mullane v Central Hanover Trust Co., 339 US 306, 314; Fashion Page v Zurich Ins. Co., supra, 50 NY2d, at 273.)
Thus, in determining the validity of a substitute service on a respondent under RPAPL 735, the test is whether the delivery of the papers to the given employee, "objectively viewed, is calculated to adequately and fairly apprise the respondent of an impending lawsuit.” (See, Ilfin Co. v Benec Indus., 114 Misc 2d 411, 413 [Civ Ct, NY County 1982]; accord, 50 Ct. St. Assocs. v Mendelson & Mendelson, 151 Misc 2d 87 [Civ Ct, Kings County 1991].)
The status of the employee in the corporate hierarchy is ordinarily not determinative of whether the service is valid. (See, City of New York v Wall St. Racquet Club, supra, 136 Misc 2d, at 408.) Just as an employee’s position at a "low rung in the corporate ladder” will not necessarily invalidate the *981 service as a matter of law, so the service will not be valid as a matter of law merely because the employee is an adult of average mental competence. Rather, the courts — generally under the rubric of determining whether the employee is of "suitable age and discretion” — will consider the circumstances of the particular service, including the nature of the employee’s position and whether this position, or the relationship of the employee to the corporation, is such that the employee will be likely to deliver the process to the named respondent. (See, 50 Ct. St. Assocs. v Mendelson & Mendelson, supra, 151 Misc 2d, at 91; Ilfin Co. v Benec Indus., supra, 114 Misc 2d, at 413.)
In order to qualify as a person of suitable age and discretion, then, the employee who is served need not be a corporate official or an agent authorized by the corporation to accept service. The process server accordingly is not required to inquire as to such status or authorization. However, as the process server must find an employee of suitable age and discretion, and as the employee’s relationship to the corporation bears on such "suitability,” the process server is well advised always to attempt to make service on a CPLR 311 (1) enumerated representative or other authorized agent and, in any event, to inquire as to the employee’s position and whether the employee is authorized to accept service.
In the case at bar, the process server’s delivery of the papers to the corporate respondent’s parking attendant was sufficient to satisfy the requirements of RPAPL 735. It is undisputed that the parking attendant was an employee of respondent’s and was employed at the premises sought to be recovered. His job involved the performance of responsible functions — for example, dealing directly with customers on various matters, including collection of fees. He was in fact respondent’s only employee who was observed to be on duty at the premises at the time of service.[2] While none of these factors alone is determinative, taken together they establish his status as an employee of "suitable age and discretion.”[3]
*982 Finally, the attendant’s expressed unwillingness to accept service of the notice of termination did not invalidate that service as a matter of law. Relying on the language of RPAPL 735 that substitute service may be made upon a person of suitable age and discretion "if upon reasonable application admittance can be obtained and such person found who will receive it,” respondent argues that substitute service may not be made unless the person to whom the papers are delivered consents to accept service. This construction is not supported by either the language or the purpose of the statute. Contrary to respondent’s contention, the terms "will receive” and "willing to receive” are not equivalents, and only the latter clearly expresses consent. While the Legislature’s choice of the somewhat peculiar term "will receive” is not explained by the legislative history, it is clear that RPAPL 735 was intended to relax service requirements for summary eviction proceedings. Thus, it permits "reasonable application” to. make substitute service before resort to conspicuous place service, as opposed to imposing the higher standard of "due diligence” applicable to actions under CPLR 308. (Eight Assocs. v Hynes, supra, 102 AD2d, at 748; Hospitality Enters. v Fuego Rest. Corp., supra, NYLJ, June 5, 1980, at 11, col 4.) Significantly, even under CPLR 308, substitute service may be made on a party who "resists” or refuses to submit to service. (Bossuk v Steinberg, supra, 58 NY2d, at 918; McDonald v Ames Supply Co., 22 NY2d 111 [1968].) It follows that refusal to accept service cannot vitiate a substitute service under the less rigorous RPAPL 735 reasonable application standard.
The traverse is accordingly denied.

. RPAPL 735 (1) provides as follows: "Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion who resides or is employed at the property sought to be recovered, a copy of the notice of petition and petition, if upon reasonable application admittance can be obtained and such person found who will receive it; or if admittance cannot be obtained and such person found, by affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises; and in addition, within one day after such delivering to such suitable person or such affixing or placement, by mailing to the respondent [in the manner further set forth in the statute].”

. Here, the process server inquired whether there was a manager on the premises, and served the attendant only after the attendant informed him that there was not. Although permitted to serve any employee of suitable age and discretion, the process server partly followed what the court has outlined as the better procedure, in asking at least for a manager.

. It is further noted that respondent does not deny that the attendant (who was present at the traverse hearing but not called as a witness) received the papers and transmitted them to his superiors. Although an *982 employee’s receipt or even transmission of the papers would not validate an otherwise improper service (Raschel v Risk, 69 NY2d 694 [1986]; Fashion Page v Zurich Ins. Co., supra, 50 NY2d, at 273), the fact that the employee delivered the papers to the proper parties is some evidence that he was of suitable age and discretion. (See, City of New York v Wall St. Racquet Club, supra, 136 Misc 2d, at 408.)