**FONAR CORPORATION, Plaintiff,**

v.

**TARIQ CONTRACTING, INC. and Applied Medical Systems, Inc., Defendants.**

**Civ. A. No. CV–93–191(DGT).**

United States District Court,
E.D. New York.

May 9, 1995.

James L. Messenger, Hutchins, Wheeler & Ditmar, A Professional Corp., Boston, MA, Frederick A. Brodie, Winthrop, Stimson, Putnam & Roberts, New York City, for defendants.

Scott A. Fields, Melville, NY, Laurence Shiff, New York City, for plaintiff.

### MEMORANDUM AND ORDER

TRAGER, District Judge:

This is a breach of contract and fraud action in which plaintiff, Fonar Corporation ("Fonar"), seeks damages for defendants', Tariq Contracting, Inc. ("TCI") and Applied Medical Systems, Inc. ("AMS"), failure and refusal to pay the final two installments due on the purchase price of a magnetic resonance imaging ("MRI") system. Fonar also seeks recovery of the additional costs incurred in installing the system due to TCI's alleged failure to insure that all installation prerequisites had been met. Before the Court are Fonar's request for a formal decision on Magistrate Judge Orenstein's Report and Recommendation ("Report"), which recommended that TCI's motion to dismiss the amended complaint for improper service of process be denied, and TCI's objections to the Report.

## Background

Fonar is a Delaware corporation engaged in the manufacture and distribution of MRI systems used for medical diagnostic purposes. Fonar's principal place of business is in Melville, New York. TCI is a Saudi Arabian sole proprietorship with its principal place of business in Al Khobar, Saudi Arabia. AMS is a Massachusetts corporation with its principal place of business in Cambridge, MA.

In May 1988, Fonar granted both AMS and TCI an exclusive distributorship to sell its MRI systems in the territory of Saudi Arabia. The distributorship was for a period of one year, but had a built in option to become a "permanent dealership" should AMS and TCI "be successful in selling [Fonar's] equipment in" Saudi Arabia. Fonar reserved the right to cancel the distributorship for cause with 90 days written notice.

In September 1990, the parties entered into a written sales agreement for the sale of a Fonar Beta 3000 MRI scanner. The agreement contained a choice of law and choice of forum provision designating New York as the appropriate jurisdiction for, and law governing, any disputes arising under the contract. The agreement was signed by AMS' president, Yasmeen Husain. However, Fonar alleged that the agreement was signed by Ms. Husain in her capacity as TCI's vice president. There is no dispute that Ms. Husain signed the agreement, or that the agreement was between Fonar and TCI, or that underneath Ms. Husain's signature appears the title vice president. Contrary to these indications, however, TCI asserted that Ms. Husain signed the agreement not as TCI's vice president, but on TCI's behalf and according to the specific direction of TCI's president and Fonar.

Subsequently, the sales agreement was modified twice. The first modification was signed by Khalid Husain, TCI's vice president, while the second was signed by Yasmeen Husain. Following the Persian Gulf War, Fonar completed the installation of the MRI system in King Faisel University Hospital. Fonar alleged that despite a provision in the sales agreement, which was never modified, TCI did not insure that the instal-

lation site was properly prepared. Fonar's employees had to wait almost two months for the site to be prepared, supervised such preparation, something which was not provided for in the sales agreement, and incurred additional costs thereby. Following the installation of the system, TCI refused repeated requests to pay the final two installments due on the purchase price.

Fonar brought this action against AMS and TCI by serving a summons and complaint on January 15, 1993. Fonar alleged causes of action for fraud, breach of the distributorship agreement, breach of the sales agreement and for recovery of the additional costs in installing the MRI system. On April 16, 1993, defendants moved to dismiss the complaint for failure to state a cause of action upon which relief could be granted, lack of personal jurisdiction over the defendants, and for improper service of process. Defendants motion was granted for the most part, and the complaint was dismissed by Judge Spatt in an Order dated May 29, 1993. However, Fonar was given thirty days to amend the complaint and effectuate proper service of process.

Fonar served an amended complaint on June 25, 1993, by delivering a summons and complaint to Ms. Husain in Massachusetts. In the complaint, Fonar alleged causes of action for breach of the sales agreement, fraud, and for recovery of the additional costs incurred in installing the MRI system in Saudi Arabia. Defendants again moved to dismiss the amended complaint for failure to state a cause of action upon which relief could be granted, lack of personal jurisdiction over the defendants and for improper service of process. In an order dated October 1, 1993, Judge Spatt: (1) granted defendants' motion to dismiss the breach of contract claim against AMS for failure to state a claim; (2) denied the motion as to both AMS and TCI with respect to the claim that the Court lacked personal jurisdiction over the defendants; and (3) referred the claim of improper service on TCI to Magistrate Judge Michael L. Orenstein for a Report and Recommendation.

A hearing on the issue of the propriety of service of process was held in front of Magistrate Judge Orenstein on January 12 and 13, 1994. At the conclusion of the hearing, Magistrate Judge Orenstein read his Report into the record (Tr. 159–73). In short, Magistrate Judge Orenstein recommended that "defendant's motion be denied in all respects and that this Court find[ ] that the plaintiff ha[d] served process properly pursuant to New York CPLR section 311, subdivision 1" (Tr. 159–60).

*Magistrate Judge Orenstein's Report and Recommendation*

In recommending that Judge Spatt deny the motion to dismiss for improper service of process, Magistrate Judge Orenstein found that service was properly made upon Ms. Husain, a de facto vice president of TCI (Tr. at 160). Magistrate Judge Orenstein noted that although TCI is technically not a corporation, it held itself out as a corporation through the use of letterhead bearing the name "Tariq Contracting, *Inc.*" (emphasis added), and through the use of corporate officer titles for its employees (Tr. at 161). Further, Magistrate Judge Orenstein found that Ms. Husain was held out and acted as TCI's vice president despite her testimony, and that of Khalid Husain, that she was neither an officer nor employee of the company (Tr. at 161–62). In addition, Magistrate Judge Orenstein looked to the sales agreement, subsequent amendments, and various letters and communications between TCI and Fonar, most of which were signed by Ms. Husain as TCI's "vice president", as an indication that TCI held out Ms. Husain as vice president of the company (Tr. at 160–63).

Alternatively, Magistrate Judge Orenstein found that even if Ms. Husain were not found to be TCI's vice president, she should be deemed "an agent of TCI, the managing agent of TCI or general agent under 311 of the CPLR, or that AMS was the managing agent of TCI in the United States" (Tr. at 163). Magistrate Judge Orenstein noted that the evidence presented at the hearing indicated that "in nearly every dealing with Fonar TCI held out Ms. Husain as their agent" (Tr. at 164). Aside from the written documents presented at the hearing, Magistrate Judge Orenstein gave great weight to the testimony of Fonar's president, Dr. Raymond

Damadian (Tr. 165–66). Dr. Damadian testified that at a meeting held at Fonar's offices in Melville to discuss the sales agreement, Tariq Husain, TCI's president (and Ms. Husain's father) stated that "Yasmeen, referring to Ms. Husain, would be their representative" (Tr. at 165). Moreover, at the same meeting, Tariq Husain stated that AMS was set up to represent TCI in the United States (Tr. at 165). In addition, Magistrate Judge Orenstein noted that in almost every written communication between Ms. Husain and Fonar, she used the pronouns "we" or "our" referring to TCI and AMS collectively (Tr. 168). Magistrate Judge Orenstein pointed out that as Ms. Husain held two graduate degrees from the University of Vermont and Columbia University, he could not believe she "would not know the use of pronouns in the English language in this matter and, therefore, was using the pronouns 'we' and 'our' as referring to TCI and AMS or TCI and herself, based upon the prior representations of her status as being the agent or the representative for TCI in the United States, either in her individual capacity or in her capacity as president of AMS" (Tr. at 168).

Finally, Magistrate Judge Orenstein found that, in the event Ms. Husain was not personally the agent of TCI, that AMS was the local managing agent of TCI, and service on AMS with a second copy of the summons was sufficient (Tr. 170–72). Citing relevant New York case law, Magistrate Judge Orenstein noted that the test with regard to the propriety of service of process on a foreign corporation through a local agent is whether the company served is so related to the defendant that it may be justly inferred that the defendant will have notice of the action (Tr. 169–70). *See Stimler v. Yoshida Shoji Co.,* 195 F.Supp. 671, 671–72 (S.D.N.Y.1961); *Sterling Novelty Corp. v. Frank & Hirsch Distrib. Co.,* 299 N.Y. 208, 211, 86 N.E.2d 564 (1949); *Ameritex Dev. Corp. v. Brown & Sites Co.,* 135 N.Y.S.2d 478, 482 (Sup.Ct. 1954). Factually, Magistrate Judge Orenstein pointed out that "AMS in all respects, and Ms. Yasmin [sic] Husain, acted as the intermediary of TCI in entering into" the sales agreement, "relaying all communications between TCI and Fonar and origination many of the communications from TCI to Fonar with respect to the disputed contract and its amendments" (Tr. at 171). In addition, Magistrate Judge Orenstein noted that AMS was capitalized and formed by relatives of Ms. Husain, including her father, TCI's president (Tr. 171). Although it was alleged that Ms. Husain is the sole shareholder of AMS, there was no evidence presented to reflect how the shares were transferred from the original shareholders to Ms. Husain (Tr. 171–72). Accordingly, Magistrate Judge Orenstein held that there was such a close relationship between AMS and TCI that "Ms. Husain had full authority and discretion to act on behalf of TCI, either individually or through her activities as president of AMS" and that AMS was TCI's managing agent in the United States (Tr. at 172).

## Discussion

In support of its objections to the Report, TCI raised substantially the same arguments as were raised in its motion to dismiss. TCI argued that: (1) Yasmeen Husain was not the vice president of TCI; (2) Ms. Husain was not authorized by appointment to accept service of process on TCI's behalf; (3) Ms. Husain was not the managing or general agent of TCI; and, (4) AMS was not the managing or general agent of TCI.

With respect to its argument that Ms. Husain was not its vice president, TCI merely restated the evidence adduced during the hearing. TCI argued that the affirmation of Khalid Husain and the testimony of Yasmeen Husain indicated that she was not TCI's vice president. TCI's argument discounts Magistrate Judge Orenstein's well-based finding that the presence of Ms. Husain's signature on the various documents as "vice president of TCI" indicated that she was being held out as TCI's vice president. According to defendant, "testimony at the Traverse Hearing clearly demonstrated that Yasmeen Husain signed the contract at the request of TCI in order to meet Fonar's time demands and that Fonar was aware that TCI had expressly authorized Yasmeen to sign on behalf of TCI." Sup.Mem.Opp'n R & R at 3. Further, TCI noted that "Fonar introduced no evidence that it thereafter believed that Yasmeen Husain was a Vice President of TCI because she signed the original sales contract

or the two letter amendments on behalf of TCI." *Id.*

■ TCI's argument should be rejected. While it may be true that Ms. Husain is not actually a vice president of TCI (a corporate position within a sole proprietorship), the record contains sufficient evidence to indicate that she was held out as TCI's vice president. Despite the self-serving testimony of Ms. Husain and affidavit of Khalid Husain, there is no evidence in the record indicating that Ms. Husain was acting at TCI's request rather than as its employee. When questioned whether there was any documentation supporting the claim that she was directed by TCI to sign the contract, Ms. Husain responded in the negative (Tr. at 18–21). In addition, Khalid Husain was not present at the hearing, nor was TCI's president, Tariq Husain. Moreover, when asked whom at Fonar specifically gave her authorization to sign the contract for TCI, something which Fonar has no authority to do, Ms. Husain was at first elusive, and then only recited the names of seven Fonar employees with whom she had dealt with generally from time to time (Tr. at 18–21). More importantly, the contact and subsequent amendments all indicated that Ms. Husain signed as "vice president of TCI."

Next, TCI argued that as Ms. Husain was not expressly designated to accept service of process on TCI's behalf pursuant to N.Y.Civ. Prac.L. & R. § 318, and TCI did not specifically indicate that Ms. Husain was authorized to accept service, service of process on her should be deemed insufficient in light of N.Y.Civ.Prac.L. & R. § 311 and the relevant case law. In support of this argument, TCI attempts to distinguish the leading case cited by Magistrate Judge Orenstein in support of his finding on this issue. *See, e.g., Fashion Page, Ltd. v. Zurich Insurance Co., et al.*, 50 N.Y.2d 265, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980). According to TCI, *Fashion Page*, does not support the Magistrate Judge's contention that service on a designated agent pursuant to § 311 does not require formal designation pursuant to N.Y.Civ.Prac.L. & R. § 318. *See* Sup.Mem. Opp'n R & R at 4. Moreover, TCI argued that "no court has held that service has been

effectuated by making service on an agent authorized by appointment … unless defendant indicated to plaintiff that a particular person was authorized to accept service on its behalf." *Id.* TCI's arguments should be rejected.

■ The issue in *Fashion Page* was whether a foreign corporation was properly served pursuant to N.Y.Civ.Prac.L. & R. § 311(1) when the process server delivered the summons and complaint to the vice president's secretary who, although not specifically designated to receive process, had been identified by the defendant's receptionist and the secretary herself as a person authorized to accept service for the corporation. The defendant argued that "an agent 'by appointment' must also be an agent 'designated' for receipt of process pursuant to CPLR 318, which requires that the designation be in writing, acknowledged by the agent and filed with the county clerk." *Fashion Page, supra,* 50 N.Y.2d at 271, 428 N.Y.S.2d 890, 406 N.E.2d 747. The New York Court of Appeals rejected this argument. Noting that the trend has been to enlarge rather than diminish the list of individuals upon whom a foreign corporation may be served, the Court held that a "corporation may appoint an agent to accept service without observing the formalities necessary to 'designate' an agent pursuant to CPLR 318." *Id.* at 272, 428 N.Y.S.2d 890, 406 N.E.2d 747. Moreover, the Court noted that the designation procedure is optional, and a process server may always serve the corporate personnel specifically identified in § 311(1)—"an *officer*, director, *managing or general agent*"—which obviously includes an individual held out as the corporation's vice president, or at least specifically referred to as the corporation's "representative" in the United States. Accordingly, service upon Ms. Husain, who was held out as TCI's vice president and local representative, was proper even though she was not specifically designated or indicated to Fonar by TCI to accept service of process.

In further support of this argument TCI cites the case of *Davis–Wilson v. Hilton Hotels Corp.,* 106 F.R.D. 505, 508 (E.D.La. 1985), for the proposition that as "state and federal courts have consistently held that

*limited agents* such as attorneys and accountants are not required to accept service on behalf of their clients", service on Yasmeen Husain, even if she is viewed as TCI's agent, was insufficient. *See* Sup.Mem.Opp'n R & R 5 (emphasis added). This argument should also be rejected.

■ Although TCI cites *Davis–Wilson* correctly, the case can easily be distinguished as Ms. Husain cannot be viewed as a "limited agent." Dr. Damadian's testimony that TCI's president, stated that "Yasmeen ... would be [TCI's] representative" in the United States, clearly indicated that TCI intended that Ms. Husain would be more than a limited agent. Ms. Husain was, in every transaction with Fonar, acting in a much greater capacity than that of an attorney or accountant. Ms. Husain signed the relevant contracts on behalf of TCI, assisted in negotiations and subsequent dealings, and was the eyes and ears of TCI in the United States. According to the case law, all N.Y.Civ.Prac.L. & R. § 311 requires when there has been no express authorization to accept service is service which, when viewed objectively, is calculated to give the corporation fair notice of the action. *See Kuhlik v. Atlantic Corp., Inc.,* 112 F.R.D. 146, 148 (S.D.N.Y.1986) (citing *Fashion Page Ltd., supra,* 50 N.Y.2d at 272, 428 N.Y.S.2d 890, 406 N.E.2d 747). Under these circumstances, service on Ms. Husain, when viewed objectively, was reasonably calculated to give TCI fair notice of the pending action.

■ Further, TCI claims that Ms. Husain was not its managing or general agent. In support of this claim, TCI argues that the factual record does not support the finding that Yasmeen Husain had authority to exercise judgment or discretion on behalf of TCI with respect to the specific transaction at issue, and that Magistrate Judge Orenstein did not make the requisite finding that Ms. Husain had authority to exercise judgment or discretion on TCI's behalf on a regular and continuous basis. These arguments should be rejected.

The record is replete with indications that Ms. Husain not only had the authority to exercise judgment and discretion on TCI's behalf with respect to the specific transaction at issue, but also on a general, regular and continuous basis.[1] For example, TCI's president indicated that Ms. Husain would be TCI's representative in the United States (Tr. 165). In addition, as stated previously, Ms. Husain signed all contracts and amendments as TCI's vice president, or at the very least on their behalf. Ms. Husain also directed the day to day relationship between TCI and Fonar with respect to the purchase and installation of the MRI system (Tr. 166–68). Further, it was Ms. Husain who chose and retained TCI's attorney for its general and specific business dealings with Fonar, which happened to be AMS' attorney as well (Tr. 166). Moreover, when a Fonar employee attempted to contact TCI's vice president directly to discuss the business relationship, Ms. Husain directed them in essence to refrain from doing so, and to direct all inquiries through AMS and TCI's counsel (Tr. 167). All of these facts point to the inescapable conclusion that Fonar had a reasonable basis to conclude that Ms. Husain was TCI's managing or general agent.

Finally, TCI claims that AMS was not its managing or general agent. In support of this claim, TCI argues that AMS could only be considered a limited agent of TCI based on the lack of authority to bind the company. Such an argument must also be rejected.

■ Under New York law, a foreign corporation may be served in the United States by delivering a copy of the summons and complaint to the corporation's agent within the United States. *See, e.g., Stimler, supra,* 195 F.Supp. at 671–72. Service on the agent is proper as long as the agent is so related to the foreign corporation that it may be justly inferred that the foreign corporation will have notice of the action. *See Ameritex, supra,* 135 N.Y.S.2d at 482. As with Ms. Husain's relationship with TCI, the record is replete with indications that AMS was much

---

1. Authority to act on behalf of a corporation may be created by conduct on the part of the principal defendant's employee, whose actions, when reasonably interpreted, caused a third party to believe that the principal consented to have the act done on its behalf by the person acting for him. *See* Restatement (Second) of Agency § 27 (1958).

more than TCI's limited agent, and, therefore, service upon its president—Ms. Husain—was proper. Specifically, TCI's president indicated to Fonar that AMS was established "so that [TCI's] needs [would] be taken care of" (Tr. 165). Further, as AMS "was in constant contact with TCI, relaying all communications between TCI and Fonar and originating many of the communications from TCI to Fonar with respect to the disputed contract and its amendments" (Tr. 171), it may justly be inferred that TCI had sufficient notice of the action.

### Conclusion

Accordingly, Magistrate Judge Orenstein's Report is adopted and TCI's motion to dismiss the amended complaint is denied.