OPINION OF THE COURT
Devin P. Cohen, J.
After oral argument and following a traverse hearing, the defendant’s motion to dismiss the complaint for lack of personal jurisdiction is denied.
On or about October 7, 2009, plaintiff commenced this action for breach of contract to recover under an insurance policy issued by defendant. Plaintiffs process server delivered a copy of the summons and complaint to the office of plaintiffs personal Allstate agent, James Torneo, located at 499 Jericho Turnpike, Mineóla, New York 11501. Defendant did not serve an answer to plaintiff’s complaint and, on or about December 24, 2009, plaintiff served defendant with a copy of a notice of default. On January 28, 2010, plaintiff served a notice of inquest on defendant.
Defendant subsequently moved by order to show cause to vacate the judgment on the ground that it did not receive the summons and complaint due to improper service. In an order dated March 18, 2010, Honorable Reginald Boddie vacated the judgment, without written opposition from plaintiff, and permitted defendant either to serve an answer or move with respect to the complaint within 20 days. On March 24, 2010, defendant served an answer alleging a number of affirmative defenses, including lack of personal jurisdiction due to improper service. Defendant subsequently moved to dismiss pursuant to CPLR 3211 (a) (8) for lack of personal jurisdiction due to improper service.
Defendant’s Motion to Dismiss
In its motion papers, defendant contends that Allstate agents, such as James Torneo, are not employees of Allstate. Rather, defendant argues, Allstate agents are “independent agents” who are not authorized to accept service of process on behalf of Allstate. Defendant submits the affidavit of Allstate Special Investigations Unit (SIU) claims representative Charles Robelen, III, in support of its motion to dismiss. Defendant describes Allstate agents, such as James Torneo, as “independent contractors who maintain a contractual relationship with *266 Allstate. This contractual relationship exclusively allows the agents to take applications for Allstate’s policies, bind coverage and accept payments of insurance premiums” (aff of Charles Robelen, III at 1). Defendant further argues that given this relationship, an Allstate agent of this nature is not an “officer, director, managing or general agent, or cashier or assistant cashier” or “any other agent authorized by appointment or by law to receive service” as required to effect personal service on a corporation (CPLR 311 [a] [1]; aff of Charles Robelen, III at 2). Mr. Robelen is not a corporate officer of Allstate nor does he claim to have any expertise in defendant’s corporate structure or the contractual relationship between defendant and Mr. Torneo. Notably, defendant does not argue that Mr. Tomeo’s office was not served, but only that the service was not effective against Allstate as a corporation.
Plaintiff contends that service was properly effected. First, plaintiff argues that James Torneo was plaintiffs personal insurance agent and that all of plaintiffs dealings related to her Allstate insurance policy were conducted through his office. Plaintiff counsel’s affirmation describes that the office had a large Allstate sign outside. All correspondence related to plaintiff’s Allstate policy was received on Allstate stationery indicating the address as that of Mr. Tomeo’s office (aff of plaintiff at 2). Finally, plaintiff argues that when the process server asked whether any individual in the office was authorized to accept service on behalf of Allstate, he was directed to Evelyn Francis, Mr. Tomeo’s secretary, who assured the process server that she was authorized to do so (aff of James Massiah at 1). Plaintiff points out that Ms. Francis willingly signed a copy of the summons as an indication of her apparent authority to accept service (id. at 2).
Based on the arguments made by both sides, on October 4, 2010 this court issued an interim order setting the matter down for a traverse hearing to determine whether and to what extent the plaintiff’s personal insurance agent and his staff were cloaked with apparent authority to accept service on defendant’s behalf, and the extent to which defendant’s actions or inactions created that apparent authority. After several adjournments granted at the request of both sides, a hearing was held wherein testimony was heard from each side.
The Hearing
At the hearing, plaintiff offered the testimony of process server James Massiah. Mr. Massiah testified that he served the *267 summons and complaint in this matter (tr at 5). Mr. Massiah testified that there was an “Allstate” sign on the building and that he was told by individuals inside that he was in an “Allstate office” (tr at 5-6). Mr. Massiah further testified that when he indicated he was there to serve a summons and complaint on Allstate, he was told that Ms. Francis would be able to assist him (tr at 6). Mr. Massiah went on to state that when he told Ms. Francis he was there to serve process she looked in the computer to confirm that the plaintiff was a client and then told him that she could take the papers (tr at 7-8). According to Mr. Massiah, Ms. Francis then read the document and signed a “received copy” receipt (tr at 8-9).
Defendant offered the testimony of Evelyn Francis. During her testimony Ms. Francis stated that she works for Allstate and answers the phone with “Good morning, Allstate” but that she receives her checks from the “Jim Torneo Agency” (tr at 16-17, 24). Ms. Francis acknowledged that she signed the subject summons and complaint but stated that she did not know what it was when she signed the document (tr at 29-30). Ms. Francis further testified that, prior to this occurrence, she had never been told by Mr. Torneo not to accept service on behalf of Allstate (tr at 19). However, Ms. Francis stated that another Allstate agent she had previously worked for had told her not to accept service on behalf of Allstate (tr at 19).
Defendant next called James Torneo to the stand. Mr. Torneo testified that he is an exclusive agent under an independent contract with Allstate and that he can only write with other carriers with the approval of Allstate (tr at 38). Mr. Torneo recalled that his contract with Allstate states that he may not accept process on behalf of Allstate but he did not have a copy of the contract with him in court (tr at 32). Mr. Torneo confirmed that he does have an Allstate sign outside of his office (tr at 38). Furthermore, Mr. Torneo stated that, as part of his agreement with Allstate, Allstate sends marketing and retention letters as well as bills to customers on his behalf (tr at 44, 47). These letters are printed on Allstate letterhead and list Mr. Tomeo’s office address as well as Mr. Tomeo’s scanned signature (exhibit 1; tr at 44). Mr. Torneo testified that he provided the signature sample to Allstate as part of the contract when he began working for Allstate (tr at 45). Mr. Torneo further testified that, although most premium payments are sent directly to Allstate at an Ohio address, he is authorized to, and does, accept premium payments on behalf of Allstate (tr at 47-50). Mr. Torneo testified *268 that he has deposit slips for depositing such payments into various bank accounts in Allstate’s name (tr at 50-51). Mr. Torneo explained that he has discretion to choose to deposit payments to accounts at any of four different banks (tr at 51).
Defendant next called Charles Robelen to the stand. Mr. Robelen stated that he is an SIU investigator for Allstate, that he works in a claims office, and that his job is to investigate “questionable claims” (tr at 57). Mr. Robelen reiterated the assertions of his affidavit that, as an SIU investigator, it is his understanding that Allstate agents like James Torneo are independent contractors and are not authorized to accept service on behalf of Allstate (tr at 58). Mr. Robelen further testified that, while he is not aware of any specific written company policy regarding service, he has been informed by his superiors that only officers of Allstate and the Secretary of State are authorized to accept service on behalf of Allstate (tr at 59-60). Mr. Robelen did acknowledge that the receptionist in his office at Allstate is permitted to accept service of process (tr at 60). Mr. Robelen does not claim to be an officer or director of Allstate and there is not testimony that he is involved in creating agency agreements.
Discussion
CPLR 311 (a) (1) requires personal service on a corporation to be made by delivering the summons to “an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.” In general, “manifestations of the principal to the other party to the transaction are interpreted in light of what the other party knows or should know instead of what the agent knows or should know” (Restatement [Second] of Agency § 49 [a]).
In accordance with this principle, courts have held that in addition to the individuals specifically listed in the statute, service may also be made upon individuals the defendant corporation “cloaks with authority” (see Fashion Page v Zurich Ins. Co., 50 NY2d 265 [1980]; Rokicki v 24 Hour Courier Serv., 282 AD2d 664, 665 [2d Dept 2001]). Thus, courts have held that where a corporate defendant holds out the address of an entity with which it does business as defendant’s own business address, without any explanation or disclaimer that it cannot be served there, defendant cloaks that entity with apparent authority to receive service of process on its behalf (see Gabriel v Beth Israel Med. Ctr., 121 Misc 2d 351 [Civ Ct, NY County 1983] [defendant *269 estopped from asserting that billing service not authorized to accept service where every indication given to plaintiff was that the address served was defendant’s business address and defendant gave no explanation that it was the address of a billing service only]). Courts will also uphold service upon an individual whose title is not explicitly listed under the statute where the process server “makes proper inquiry of . . . defendant’s employee and delivers the summons in accordance with his or her direction” (Dunn v Pallett, 66 AD3d 1179, 1180 [3d Dept 2009]).
In support of its argument that an independent insurance agent is not authorized to accept service on behalf of an insurance company defendant cites Hotel Glenmore, Inc. v American Eagle Fire Ins. Co. (280 App Div 445 [4th Dept 1952]). Hotel Glenmore dealt specifically with the question of whether or not a local soliciting and underwriting agent should be considered a “managing agent” within the meaning of section 228 of the Civil Practice Act (the predecessor to CPLR 311) for the purposes of accepting service. The Court held that service of process on local fire insurance agents was invalid service on the insurance companies because the local insurance agents did not have “general powers of management or . . . authority [otherwise] to act for the companies” (Hotel Glenmore, 280 App Div at 446).
The instant case is distinguishable from Hotel Glenmore on a number of grounds. First, Hotel Glenmore was decided in 1952 and dealt with the interpretation of an earlier statute governing service of process on a corporation. Second, the Court in that case only addressed the interpretation of the statutory term “managing agent” and none of the other titles designated as individuals who may accept service. Furthermore, since Hotel Glenmore, “[t]he trend has been to enlarge rather than diminish the list of those who may accept process on behalf of [a] corporation” (Fashion Page, 50 NY2d at 271). Not only has the list of individuals who may accept service under the statute been expanded, but courts have increasingly interpreted the terms of CPLR 311 more liberally (see id. [“(t)he statute . . . should be liberally construed”]).
In this case, Mr. Tomeo’s own description of the contractual duties he performs for Allstate fit the category of “cashier,” a position specifically designated under the statute for the acceptance of service (CPLR 311 [a] [1]). Mr. Torneo accepts premium payments on Allstate’s behalf and deposits them into a bank ac *270 count in Allstate’s name. Furthermore, the billing statements sent from Allstate contain both Mr. Tomeo’s address and an Allstate address in Ohio. The statements indicate that payments may be made either by mail to the Ohio address or directly to the individual Allstate agent. Mr. Torneo clearly acts, functionally, as a cashier on behalf of the corporation.
Everything about plaintiffs dealings with Mr. Torneo and his office indicated to plaintiff, and to the reasonable layperson, that plaintiff was conducting business directly with Allstate. All correspondence sent to the plaintiff was sent by Allstate, on Allstate stationery, with Mr. Tomeo’s scanned signature, and the only address indicated (except on the bills) was that of Mr. Tomeo’s office. Allstate does not claim to have given any disclaimer or other indication to plaintiff that this office was not an address where it would accept service. Despite Ms. Francis’ testimony that she knew from a prior employer not to accept service on behalf of Allstate, given that her signature appears on the face of the copy of the summons and complaint itself, the court does not find credible her explanation that she was not aware that she was signing to accept service. The court finds the testimony of plaintiffs process server credible in stating that he made proper inquiry of Ms. Francis and delivered the summons in accordance with her direction (see Dunn, 66 AD3d 1179).
Mr. Tomeo’s relationship with defendant Allstate involved the power to exercise a good deal of discretion and control, and to make extensive use of the trappings of Allstate’s corporate identity. Ultimately, the court finds that, through its conduct, defendant Allstate cloaked Mr. Torneo and his office with apparent authority to receive service of process on its behalf. In fact, the defendant appears to have done so deliberately, deriving benefit from the branding effect of having its affiliated agencies appear to represent community outposts of a parent company. “Under these circumstances, ‘the plaintiffs process server acted reasonably and with due diligence’ and it was reasonable for the process server to believe that [the party who accepted service] was authorized to accept service on behalf of [defendant]” (Aguilera v Pistilli Constr. & Dev. Corp., 63 AD3d 765, 767 [2d Dept 2009], quoting Rokicki, 282 AD2d at 665; see Fashion Page, 50 NY2d 265; Eastman Kodak Co. v Miller & Miller Consulting Actuaries, 195 AD2d 591 [2d Dept 1993]; Seda v Armory Estates, 138 AD2d 362 [2d Dept 1988]).
The court notes that defendant’s default was previously vacated by Judge Boddie’s order of March 18, 2010. However, *271 that prior order, while permitting defendant to answer or move with respect to the instant complaint, makes no findings with respect to personal jurisdiction and so does not preclude the current finding that defendant was properly served.
For the foregoing reasons, defendant’s motion to dismiss for lack of personal jurisdiction is denied.